UNITED STATES, Appellee

v

JOHN J. O'HARA, Captain, U. S. Marine
Corps Reserve, Appellant

14 USCMA 167, 33 CMR 379

*Major Frederick D. Clements,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Robert C. Watson,* USNR.

*Lieutenant Colonel Remmel H. Dudley,* USMC, argued the cause for Appellee, United States. With him on the brief were *Commander Benjamin H. Berry,* USN, and *Commander John D. Moroney,* USN.

## Opinion of the Court

QUINN, Chief Judge:

The accused contends his conviction for larceny from the Commissioned Officers' Mess at Camp Pendleton, California, should be reversed because the instructions are prejudicially erroneous.

It appears the accused was the Operations Officers of the Mess system, which included several units. In preparation for his release to inactive duty, he was scheduled to be detached from his station and duties on August 13, 1962. The incident which led to the Charge occurred on August 10, 1962, at the 17 Area Officers' Recreation Center, one of the units of the Mess.

On the morning of Friday, August 10, Gunnery Sergeant Dallas R. Clark, Acting Manager of the Center, was in and out of the office. One absence lasted about twenty minutes. Clark left the door of the office safe closed but unlocked. When he returned, he found the accused "standing there"; the door of the safe was ajar about an inch. Clark locked the safe. About 1:15 that afternoon he went to the safe to make change, and discovered that all the one- and five-dollar bills were missing from the cash box. He reported the loss to Major Margaret A. Brewer, the Mess Treasurer. They went over the cash account and determined the loss amounted to about $370.00.

Shortly before Major Brewer was informed of the missing money, she had had a conversation with the accused. He told her he had been in the office, and

noticed the safe door was opened. He said he *"should have* taken some of the money" to teach Sergeant Clark "a lesson." (Emphasis supplied.) The following Monday morning, August 13, Major Herbert M. Lorence, of the Military Police and Guard Battalion, interrogated the accused for approximately an hour and a half. The accused said he was in the office and found the safe open. He admitted he looked into the cash drawer, but insisted "he did not take any money from the safe." About noon, the accused again talked to Major Brewer. He merely asked her how much money was missing, and whether the money had been taken from the safe. Later in the day, the accused was questioned further by Major Lorence. Once more he denied taking any money from the safe. As the questioning continued, he reversed himself. He admitted he took the money. He said he did so only "to teach Sergeant Clark a lesson." In a sworn statement, he also admitted that after he left the office he went to the bank in a nearby town and exchanged the one- and five-dollar bills for tens and twenties. He attributed the exchange to the fact that the money he took from the safe "was extremely bulky." He turned over the money, in the form of ten- and twenty-dollar bills, to the Evidence Custodian of the Criminal Investigation Section.

With some elaboration, the accused testified at trial along the lines of his pretrial statement. He said that *when* he saw the open safe in the Center office, he recalled another occasion he had

found a safe open. He had then removed some money from the safe to teach the custodian that an open safe was not to be left unguarded. About an hour later and before he left the building, he returned the money to the custodian. Remembering the "salutory [sic] effect" this incident had on the person involved, he "decided at that point to do the same thing with Sergeant Clark." Referring to the bank exchange of the money, he said the larger bills were "easier to carry about and keep track of." He put the money in a bureau drawer in his home. The reason for his first denial to Major Lorence was that he "still wanted to return the money to Sergeant Clark"; he "felt" it would be "somewhat incriminating" if he gave it to the Provost Marshal. During the second interview with Major Lorence, he decided his "continual denial" was "only complicating matters," so he admitted he took the money and that he "intended [only] to teach Sergeant Clark a lesson."

Before instructing the court-martial, the law officer held an out-of-court hearing on his proposed instructions. Defense counsel indicated he examined the instructions and had no objections. On the reconvening of the court, the law officer instructed the court members on the applicable rules of law. Among other things, he advised the court-martial that it must find the accused "wrongfully took or withheld" the money with the intent to permanently deprive or defraud the Officers' Mess of its use, or to appropriate it permanently to his own use. He further instructed as follows:

"A withholding may arise either as a result of a failure to return, account for, or deliver property to its owner when a return, accounting, or delivery is due, or as a result of devoting property to a use not authorized by its owner, and this is so even though initially the property had come lawfully into the hands of the person thus withholding it.

. . . . .

"Evidence has been introduced that the purpose of the accused in taking or withholding the money was to teach a lesson to Gunnery Sergeant Clark. Such a purpose or intent is not criminal. You are advised that not every taking or withholding of property without the consent of the owner constitutes a violation of the Uniform Code of Miliary Justice. In each case there must be an accompanying criminal intent either to deprive the owner permanently of the property, which is larceny, or the intent to deprive him temporarily of the property, which is wrongful appropriation. If neither of these intents is present, the taking or obtaining may be wrongful but it is not a violation of the Uniform Code of Military Justice.

"Therefore, you are advised that unless you are satisfied beyond a reasonable doubt that the accused did not intend to teach a lesson to Gunnery Sergeant Clark, then you must acquit the accused."

Instructions provide the court-martial with the legal framework within which it determines the accused's guilt or innocence. If the legal rules are not related to the evidence in the case, generalizations, although correct in the abstract, may mislead the court. See United States v Smith, 13 USCMA 471, 33 CMR 3. We have, on occasion, called attention to the obligation of the law officer to revise the standard forms of instruction found in service pamphlets to make them more pertinent to the evidence in the case. See United States v Kitchen, 5 USCMA 541, 547, 18 CMR 165, footnote 2. A number of cases before this Court indicate the appropriateness of such editing in a larceny prosecution.

Three separate acts denominated loosely as "larceny" are prohibited by Article 121 of the Uniform Code of Military Justice, 10 USC § 921. Under the statute, one who "wrongfully takes, obtains, or withholds" personal property of another with the designated intent commits the offense. The standard form of specification, which was utilized in this case, allows the Government to prove any one

or all of these acts. United States v Sicley, 6 USCMA 402, 408, 20 CMR 118. However, not every taking of property without the express consent of the owner or custodian constitutes a "wrongful taking" within the meaning of the Article. See United States v Hayes, 8 USCMA 627, 629, 25 CMR 131. And, not every withholding of property known to belong to another comes within the scope of the Article. United States v Jones, 13 USCMA 635, 33 CMR 167. Consequently, when there is evidence in the case from which the court-martial can reasonably conclude the accused's act does not constitute a violation of the Article, an instruction in general terms may not adequately focus attention on the issues the court must decide. In the *Jones* case, for example, the accused was charged with larceny. Under one view of the evidence, the court-martial could have found the accused received from another, and thereafter withheld, property which he knew to be stolen from the Government. Such evidence would support a finding of receiving stolen property, but not a conviction for larceny. The Court, therefore, concluded the standard instruction on withholding as a basis for larceny did not adequately apprise the court-martial of the difference between the two types of withholding presented by the evidence. In the *Sicley* case, there was evidence indicating the accused had improperly received money from the Government under circumstances which imposed no obligation upon him to account for its use or to apply it to a particular use; in other words, the evidence indicated a debtor-creditor relationship between the accused and the Government. The Court held that the usual larceny instruction on withholding did not adequately inform the court-martial that nonpayment of a debt, *i.e.*, the debtor's withholding of payment from the creditor, did not constitute larceny. See also United States v Lyons, 14 USCMA 67, 33 CMR 279.

Here, the evidence justified a finding

of guilty upon either of two theories. First, the court-martial ▪▪▪▪ ▪ could find that when the accused took the money from the safe, he intended then and there to deprive the Mess permanently of it. Alternatively, the court-martial could find that when the accused removed the money from the safe, he intended only to teach Sergeant Clark a lesson about the danger of leaving the safe open, and then to return the money to him, but that after the money was in his possession the accused decided to appropriate it to his own use. See United States v Smith, 11 USCMA 321, 29 CMR 137. This finding is supported by the evidence that the accused exchanged the money into bills of larger denomination; that he concealed the money in his home; that he repeatedly lied about not taking the money from the safe. The law officer's general instructions on taking and withholding covered both these theories.

Turning to the accused's defense, if the court-martial believed the whole of his testimony, it could conclude that at all times, ▪▪▪▪ ▪ from the original taking of the money to its return, the accused intended only to teach Sergeant Clark a lesson in safeguarding funds. That finding would require that the accused be acquitted. United States v Roark, 12 USCMA 478, 31 CMR 64; United States v Smith, supra. The significance of this aspect of the evidence was recognized by the law officer; in fact, the transcript of the out-of-court hearing indicates the instructions set out above were based upon the *Roark* case.[1] Thus, the instructions in their entirety dealt directly and adequately with all issues the court-martial had to decide. The nature of the defense was clearly defined; and its legal effect on the accused's guilt or innocence was plainly delineated. We find no misstatement or inadequacy which can reasonably be said to prejudice the accused.

---

[1] If anything, these instructions on accused's defense were overly favorable to him. They indicated the accused could be acquitted if his purpose in taking the money was to teach Sergeant Clark a lesson, without regard to whether he thereafter determined to appropriate the money to his own use.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.