UNITED STATES, Appellee,

v.

Mitchell A. HUBBARD, Sergeant, U.S. Army, Appellant.

No. 59,528/AR.

CM 8701221.

U.S. Court of Military Appeals.

June 26, 1989.

For Appellant: *Captain Lauren B. Leeker* (argued); *Colonel John T. Edwards, Lieutenant Colonel Joel D. Miller, Captain Brian D. Bailey, Captain Alfred H. Novotne* (on brief); *Captain Donald G. Curry, Jr.*

For Appellee: *Captain Mark E. Frye* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Kathryn F. Forrester* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On May 28, 1987, appellant was tried by a military judge sitting alone as a general court-martial at Fort Hood, Texas. Pursuant to his pleas, he was found guilty of conspiracy, two specifications of wrongful sale of military property, wrongful disposition of military property, larceny of military property with a value in excess of $100.00, and wrongfully giving away another soldier's military identification card, in violation of Articles 81, 108, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 908, 921, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 2 years, total forfeitures, and reduction to the lowest enlisted grade. Consistent with his pretrial agreement with appellant, the convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence in a short-form opinion dated December 4, 1987.

This Court granted review of the following issue:

WHETHER APPELLANT'S PLEA OF GUILTY TO LARCENY WAS IMPROVIDENT SINCE APPELLANT'S RENDI-

TION OF THE EVENT DURING THE PROVIDENCE INQUIRY ESTABLISHED ONLY THAT APPELLANT RECEIVED STOLEN PROPERTY.

We affirm the findings of guilty and the sentence in this case. *See generally United States v. Epps*, 25 MJ 319, 323 (CMA 1987).

The basic facts of this case are that appellant possessed numerous military explosives, a STAR–LOK descrambler, and another soldier's military identification card. He either sold or gave these items to undercover Criminal Investigation Command (CID) agents. An extensive inquiry was conducted by the military judge concerning appellant's role in the theft of the descrambler. (See appendix.)

In particular, appellant admitted that he was the noncommissioned officer in charge of the Repair and Utilities Shop at the III Corps Troop School. Specialist Semper worked for him at that shop and gave him the descrambler. The descrambler was a shelf item for the Troop School, which previously had a satellite dish to receive messages. Appellant had seen this item on the shelf for a long time, and he was responsible in his military duties for giving this equipment out. Semper gave him this item as "unsigned-for property" and admitted stealing the property. Semper stated "that he stole it when he was on CQ" and that appellant could turn it in or do anything else he "wanted with it." Appellant admitted that he had ample time "to return it" to the supply room but decided to take it from Semper's car on base to his own house off base.

Thereafter, the military judge accepted appellant's pleas as provident, stating:

MJ: All right, under the circumstances, I am going to accept the accused's plea to larceny, not only because he has indicated to me that he is convinced in his own mind that he committed the offense but also because...I'm relying on *United States versus Bryant* at *9 MJ 918* [ (ACMR 1980) ] that discusses this aspect that I'm having problems with and that is the asportation of the stolen item, the taking and the movement of that item. It seems to me, from what the accused is telling me, that the original asportation of the STAR–LOK device continued because Semper wasn't satisfied, it appears, with that location of the property and wanted to get rid of it, apparently at all costs, before he got out of the Army and went so far as to just give it away. As I heard, the accused can't tell me when Semper actually physically laid his hands on it and removed it from the stock room, it seems to me, as I say, that original asportation continued, as indicated by the actions of Semper. So, there was a continual flow or movement, relatively uninterrupted, I believe, under the circumstances, so that the crime of larceny continued through that asportation phase. One who knowingly assists in the actual and proximate act of carrying it away..that is, the stolen property..is a principal to larceny.

So, as I say, under those circumstances as I've described and relying on that *Bryant* case and what the statements were from Sergeant Hubbard, that he's convinced that he committed the act of larceny, I will accept his plea to the offense of larceny.

------

The basic question we must address in this case is whether the record of trial supports appellant's conviction of larceny under Article 121. *See United States v. Harrison*, 26 MJ 474 (CMA 1988); *United States v. Johnson*, 26 MJ 415, 417 (CMA 1988). The defense asserts, for the first time on appeal, that appellant's responses during the providence inquiry do not show that he aided and abetted the actual thief in the latter's larceny of the descrambler. Art. 77, UCMJ, 10 USC § 877. Instead, it contends that they show Semper's asportation of this item was complete before appellant received these stolen goods. *Cf. United States v. Epps, supra* at 322; *United States v. Wright*, 22 MJ 25 (CMA 1986).

■ In *United States v. Seivers*, 8 MJ 63, 65 (CMA 1979), this Court said, "It is well settled that the larceny continues until such time as its fruits are secured in a place where they may be *appropriated to the use of the perpetrator* of the scheme." (Emphasis added.) Earlier, in *United States v. Escobar*, 7 MJ 197, 199 (CMA 1979), this Court cited a passage from *United States v. Barlow*, 470 F.2d 1245, 1253 (D.C.Cir.1972), which similarly stated:

The crime of larceny obviously continues as long as the asportation continues and the original asportation continues at least so long as the perpetrator of the crime indicates by his actions that he is dissatisfied with the location of the stolen goods immediately after the crime and with no more than a few minutes delay causes another to continue the asportation.

In this light, a belated final disposition of purloined items by the thief to a third party cannot reasonably be considered asportation. *See United States v. Graves*, 20 MJ 344, 346 (CMA 1985). *Cf. United States v. Wright, supra.*

Turning to the facts in the present case, we agree with the military judge that Semper's gratuitous transfer of the descrambler from his car to appellant reasonably reflects Semper's dissatisfaction with its location. However, we are not convinced that the military judge was reasonable in inferring on this basis alone that the asportation was still in progress. Appellant admitted that he did not know when Semper took the descrambler, and he speculated it occurred 4 months earlier. Moreover, he also acknowledged that Semper was leaving the service in a few days. Finally, his other admissions clearly indicate that Semper's transfer of the property to him was not to secure the descrambler for future disposition by Semper but, instead, was a final disposition of this property. Appellant expressly admitted that Semper gave the descrambler to appellant because the former had "no use for it," and he did not want to return it to someone else who "would want to press charges" against him. Such factual circumstances do not reasonably suggest that asportation of the descrambler by the actual thief was continuing at the time appellant received it. *Cf. United States v. Bryant*, 9 MJ 918 (ACMR 1980).

■ In any event, paragraph 46c(1)(b), Part IV, Manual for Courts–Martial, United States, 1984, states:

A "withholding" may arise as a result of a failure to return, account for, or deliver property to its owner when a return, accounting, or delivery is due, even if the owner has made no demand for the property, or it may arise as a result of devoting property to a use not authorized by its owner. Generally, this is so whether the person withholding the property acquired it lawfully or unlawfully. *See* subparagraph c(1)(f), below. However, acts which constitute the offense of unlawfully receiving, buying, or concealing stolen property or of being an accessory after the fact are not included within the meaning of "withholds." Therefore, neither a receiver of stolen property nor an accessory after the fact can be convicted of larceny on that basis alone.

In view of appellant's admitted custodial role over this military property, his conduct as described above clearly establishes his guilt of larceny as a withholder. *See United States v. West*, 17 MJ 145 (CMA 1984); *United States v. Leslie*, 13 MJ 170 (CMA 1982); *United States v. Ford*, 12 USCMA 3, 30 CMR 3 (1960); *United States v. Henderson*, 9 MJ 845 (ACMR 1980). *Cf. United States v. Welker*, 8 USCMA 647, 25 CMR 151 (1958); *United States v. McFarland*, 8 USCMA 42, 23 CMR 266 (1957). Accordingly, his conviction under Article 121 may be affirmed. *United States v. Felty*, 12 MJ 438 (CMA 1982); *see United States v. Mazur*, 13 MJ 143, 145 (CMA 1982) (Everett, C.J., concurring), cited with approval in *United States v. Epps*, 25 MJ at 322.

■ Finally, in *United States v. Epps, supra* at 323, this Court alternatively held that

if an accused pleads guilty and then at the providence inquiry, he gives sworn testimony which clearly establishes his guilt of a different but closely-related offense having the same maximum punishment, we may treat that accused's pleas of guilty as provident.

Epps pleaded guilty to larceny, a crime we found "closely-related" to receiving stolen property, the crime for which he was otherwise guilty. *Id.* The same two crimes are involved in appellant's case.

Of course, the maximum authorized punishment for larceny at this court-martial was 5 years, but only 3 years was authorized for receiving stolen property. *See* paras. 46e(1)(b) and 106e(2), Part IV, *Manual, supra.* In *United States v. Wright,* 22 MJ at 27, however, this Court affirmed findings of guilty for "closely-related" crimes when the authorized sentence was substantially similar to that which an accused could receive had he been found guilty of the proper crime. *See United States v. Graves,* 20 MJ at 346. In the instant case, appellant could have received a maximum sentence of 45 years' and 6 months' confinement on the basis of a larceny conviction added to the rest of the findings of guilty in this case. If a finding of receiving stolen property was used, the maximum authorized sentence would be reduced to 43 years' and 6 months' confinement. In this context, the *Epps* rationale is still applicable, especially where appellant's adjudged and approved confinement was only 2 years. *Cf. United States v. Wright, supra* at 27; *United States v. Graves,* 20 MJ at 346.

The decision of the United States Army Court of Military Review is affirmed.

## APPENDIX

At trial, appellant pleaded guilty to all the charges, including the larceny offense regarding the STAR–LOK descrambler. The following colloquy then occurred:

MJ: Well, gentlemen, I'm satisfied with everything that the accused has told me, vis-a-vis the Charges, except the larceny charge, the larceny of the STAR–LOK descrambler.

(Accused and counsel conferred.)

ACC: All right, Your Honor.

MJ: You don't have to say anything there, Sergeant Hubbard.

MJ: The reason that I'm having problems is that I'm trying to figure out whether this is larceny or receiving stolen property.

DC: Yes, sir. I think if Sergeant Hubbard explains the remainder of exactly the rest of the story, you'll see why it was . . . why the receiving of stolen property was, in fact, the Charge that we crossed out and, in fact, went with the larceny.

MJ: Okay. Well, do you care to continue here then, Sergeant Hubbard?

ACC: Yes, Your Honor. Specialist Semper actually lived in the barracks and he kept that component inside of his car. But I later confronted and found out that it wasn't actually until I actually took it off post in my car. So, it remained on post until I took it off.

MJ: Well, it was out of government control, though, was it not? It was in Semper's car.

ACC: It was still in government controls, Your Honor, because it was still on post.

(Accused and counsel conferred.)

MJ: Well. . . . .

ACC: I'm still not clear for the fact that he actually kept it in his car. He might have kept in the barracks also.

MJ: Well, you're saying . . . this word may jar your memory, "asportations"; did Captain Price talk to you about the movement of the property?

ACC: Yes, he did, Your Honor.

(Accused and counsel conferred.)

MJ: And you're saying, or are convinced at least in your own mind, that a larceny hadn't taken place until you actually took the property and moved it off the installation?

ACC: Right, Your Honor, and put it in my apartment.

MJ: Well, how long did Semper have it in his control?

ACC: I really don't know, Your Honor; that part, I never found out.

MJ: Well, were you responsible in your military duties for that STAR–LOK descrambler?

ACC: When I received it from his hands to mine. . . . .

MJ: No, no, no. What I mean . . . you said that you were responsible in your military duties for passing out certain equipment, did you not?

ACC: Yes, Your Honor, I did.

MJ: Well, was one of the pieces of equipment that you would give out be [sic] this STAR–LOK descrambler?

ACC: Yes, Your Honor.
(Accused and counsel conferred.)

MJ: And you had no idea though of when Semper took that thing though, do you?

ACC: No, I don't, Your Honor.
(Pause.)

MJ: Well, how did . . . Semper just had this thing thrown in the back of his car or what?

ACC: Well, Your Honor, when Semper was actually signing to go off to ETS and getting his clearing papers all together, on his last day, he came over and asked me if I wanted this item, because it was unsigned-for property, and I asked him, "Well, do you want to take it back?" and he said, "No," that he couldn't take it back because he was afraid that someone would see him take it back and they would think that he had stolen it and they would want to press charges and whatnot.

MJ: Well, then, was Semper using the item in conjunction with any of his military duties?

ACC: No, Your Honor, he wasn't.

MJ: Semper, then, grabbed . . . stole the property, right? As far as you knew?

ACC: Yes, Your Honor, he did.
(Pause.)

* * * * *

DC: Your Honor, Sergeant Hubbard would like to clarify a point.

MJ: Okay. I was going to ask some more questions, but go ahead.

ACC: Your Honor, my intent, as to the STAR–LOK, even though I had no use for it, was to actually . . . at some point in time, it was to actually sell it or get rid of it in another manner. But, how this other individual came across it was was that, I guess, it would be just as hard trying to return it as to keep it.

MJ: Well, what exactly did Semper say to you when he gave it to you?

ACC: His exact words, Your Honor, I really don't know. I really don't know to his exact words.

MJ: Well, you know, obviously, you're not going to say to me what those words were exactly, but I mean to the best of your recollection, what were those words?

ACC: Okay, he asked me if I wanted this and I said, "Yeah, sure" and then he told me what it was and how he obtained it. So, I decided then to return it sometime, when I was actually on CQ and he also explained that it was unsigned-for property.

MJ: Okay, did he tell you that he could . . . that you could take it back?

ACC: Not in words, Your Honor.

MJ: Well, in actions then, or what?

ACC: Well, to tell you the truth, no, he didn't, either in words or actions; I don't believe he did. It's really not clear to me at this point in time, but he did emphasize that it was unsigned-for property and that I could do whatever I wanted with it.

MJ: Okay, did he say that it was a hot item?

ACC: Yes, Your Honor, he did.

MJ: Did he say that he wasn't satisfied with keeping it around, wherever he had it, in his car or barracks room?

ACC: No, Your Honor, he told me that he didn't have no use for it and that, if I wanted it, I should take it. If I hadn't taken it, I'm sure he would have given it to someone else.

MJ: So, he didn't say that it was hot and he wanted to get rid of it because he was nervous?

ACC: Well, Your Honor, he told me that, since he was leaving and he didn't have no use for it ... and, I guess, obviously, he couldn't sell it to anybody, he gave it to me.

(Accused and counsel conferred.)

ACC: Because, this man was my assistant in the R-and-U Shop. I had two people that I governed over.

(Pause.)

MJ: So, that was his last day in the Army?

ACC: Yes, Your Honor, I believe it was.

. . . .

MJ: The day that he gave it to you?

ACC: ...it was that or two days later.

(Pause.)

MJ: But you don't remember when he took it?

ACC: No, Your Honor, I don't.

MJ: Do you have any ideas as to when he took it?

ACC: Maybe during the renovation of that building.

MJ: How long before was that?

ACC: Well, maybe four months prior to that.

MJ: But you have no idea though?

ACC: About when he took it?

MJ: Right.

ACC: No, Your Honor, I don't.

(Pause.)

MJ: Did he tell you ... did this Semper fellow tell you where he had it?

ACC: No, Your Honor, he didn't.

MJ: Well, I thought you mentioned before, to me, that he had had it in his car.

ACC: Well, he brought it to me in his car.

MJ: From his car?

ACC: Right, Your Honor.

MJ: So, he went into his car and got it and brought it out to you?

ACC: That's right, Your Honor.

MJ: You didn't follow him or see him take it out of the car, did you?

ACC: Yes, I did, Your Honor.

MJ: Well, where was it?

ACC: Excuse me?

MJ: Where was it in the car?

ACC: It was on the front seat, Your Honor.

MJ: Was it covered by anything?

ACC: No, Your Honor, it wasn't.

MJ: It was just laying out in the open?

ACC: Yes, sir.

(Pause.)

MJ: All right, anything else on that then, Sergeant Hubbard?

ACC: Yes, Your Honor, getting to the fact that I actually wanted to put it back, but something inside of me told me not to. So, I did take it home and I did dispose of it by giving it to Agent Houser. So, therefore, I do believe ... in all aspects, I did have the chance to return it, so I do believe that I had stolen this item.

MJ: How long did you have it before you gave it to Houser?

ACC: Maybe about two weeks, Your Honor.

MJ: And you had ample opportunity to stick it back in the supply room?

ACC: More or less, Your Honor, yes, I did.

MJ: So, your intent when you gave it to ... when you took it ... well, not when you took it, but when you decided to give it to Houser, your intent then was to permanently deprive the government of the use and benefit of that property; is that right?

ACC: Yes, Your Honor.

MJ: And you're convinced in your own mind that you stole that STAR-LOK device?

ACC: Yes, Your Honor, I am.

EVERETT, Chief Judge (concurring):

In view of Hubbard's custodial responsibilities, I believe that his admissions during the providence inquiry can be construed to establish his guilt of larceny. In any event, the conviction can properly be affirmed on the alternative grounds stated in *United States v. Epps*, 25 MJ 319, 323 (CMA 1987).

COX, Judge (concurring):

I agree that the withholding by Sergeant Hubbard constituted larceny under Article

121, Uniform Code of Military Justice, 10 USC § 921. Uniquely, Sergeant Hubbard was the custodian of the property, and therefore he was entitled to lawfully receive it from the thief and return it to the Government. In my view this was a new taking; but I would limit the rule to these unique facts. Generally speaking, a "receiver" is not a new thief.

Furthermore, where a guilty plea is first attacked on appeal, we must construe the evidence in a light most favorable to the Government.

Although I do not criticize the military judge, I would have been equally satisfied if he had followed his instincts and accepted the plea to receiving stolen property. This would have saved everyone the trouble caused by this issue. A 43–year maximum sentence would have given him ample room to work toward a fair sentence.