**UNITED STATES**

v.

**Airman First Class Robert L. NEFF, FR276–80–4491, United States Air Force.**

**ACM 29137.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 8 Jan. 1991.

Decided 11 June 1992.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Lieutenant

Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Major Jeffrey C. Lindquist.

Before LEONARD, RIVES, and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

LEONARD, Senior Judge:

This is another case where the government charged a larceny, the accused pleaded guilty, but the conduct admitted and stipulated is not a larceny. We set aside both of appellant's convictions and dismiss the underlying charge and specifications.

### Facts

Appellant pleaded guilty to two thefts from the Eglin Air Force Base Exchange. Although the government alleged the offenses in reverse chronology, we will address them as they occurred, beginning with specification 2 of the Charge. According to his admissions during his guilty plea inquiry, appellant went to the Exchange one evening to buy a stereo for his car. He wanted an Audiovox AM/FM cassette player priced at $99.00 and found a box that purported to contain this item and took it to the checkout. He paid $99.00 for the item and took it to his car. Upon opening the box, he found it contained a higher priced Pioneer CD player. He also discovered that the box did not contain the correct wires to connect it to his car. He did not return the Pioneer CD player, but did go back to the store to obtain the correct wires.

While selecting his purchase, appellant saw a salesclerk mistakenly place an Audiovox CD player in a box for an Audiovox cassette tape player marked with a price of $139.00. The next morning he went back to the store and purchased this item for the $139.00 marked on the box. The correct price of the Audiovox CD player was $369.00.

The military judge treated the alleged theft of the Pioneer CD player as a wrongful withholding of property. He conducted the following inquiry with appellant:

MJ: And you knew that you—well, did you know that you were not entitled to retain that item at that time?

ACC: Yes, sir.

MJ: So I presume then that you did not go back to the BX and tell the, "Listen, you made a mistake here, you gave me the wrong article"?

ACC: No, sir.

MJ: So you withheld it from them at that point?

ACC: Right.

MJ: Did you understand that that withholding was wrongful, that you did not have the right to do that?

ACC: Yes, sir.

With respect to the alleged theft of the Audiovox CD player, the military judge conducted the guilty plea inquiry based on a larceny by wrongful taking. He obtained admissions from appellant that he purchased a $369 item for only $139 and that doing so amounted to a wrongful taking of property of the Army and Air Force Exchange Service.

The government offered no evidence contrary to appellant's version of the facts for either "theft." There was no evidence offered that appellant switched prices on either item or placed the items in the incorrect boxes.

### Issues

In response to our specified issues,[1] appellant maintains that both of his guilty pleas were improvident. He asserts his conduct did not amount to a larceny in either alleged "theft" from the Eglin Exchange. The Government takes a more expansive view of larceny and asks that we find appellant's pleas provident. The question we are faced with for both offenses is whether appellant's admissions in his guilty

plea inquiry and stipulation of fact provide sufficient factual basis to support guilty pleas to the offense of larceny. *See* R.C.M. 910(e).

### Military Law of Larceny

■ To resolve this case, we must consider the origin of our current military law of larceny. Before enactment of Article 121, UCMJ, 10 U.S.C. § 921, the Articles of War required allegation and proof of a specific theory of larceny.[2] Enactment of Article 121 combined the offenses of common law larceny by trespass, embezzlement, and obtaining property by false pretense into one statutory offense of larceny and wrongful appropriation. INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE, at 1232; *United States v. McFarland*, 8 U.S.C.M.A. 42, 23 C.M.R. 266, 269 (1957); *United States v. Buck*, 3 U.S.C.M.A. 341, 12 C.M.R. 97, 99 (1953); MCM, Part IV, paragraph 46c(1)(a) (1984). Consolidation of the different types of larceny offenses into Article 121 did not create any new larceny offenses that did not exist prior to the consolidation. *United States v. Mervine*, 26 M.J. 482, 483 (C.M.A.1988); *McFarland*, 23 C.M.R. at 269; *Buck*, 12 C.M.R. at 99; *United States v. Sicley*, 6 U.S.C.M.A. 402, 410 n. 1, 20 C.M.R. 118, 126, n. 1 (1955); *United States v. Dean*, 33 M.J. 505, 598 (A.F.C.M.R.1991); *United States v. Chapman*, 15 C.M.R. 755, 757 (A.F.B.R.1954). Consequently, Article 121 does not criminalize conduct not previously recognized under military law as common law larceny, larceny by false pretenses, or embezzlement. *Mervine*, 26 M.J. at 483; *McFarland*, 23 C.M.R. at 271; *Sicley*, 20 C.M.R. at 126, n. 1; *Buck*, 12 C.M.R. at 99; *United States v. McCanless*, 29 M.J. 985 (A.F.C.M.R.1990); *United States v. Ten-*

---

1. After our independent review of appellant's case, we asked the parties whether the facts admitted by appellant in his pleas to both larceny specifications were sufficient to support provident pleas of guilt to these offenses.

2. The various larceny offenses were charged under different Articles of War and the 1928 Manual for Courts–Martial (MCM) provided for different forms of specifications for three types of larceny offenses. For example, larceny and

embezzlement were alleged under Article 93 and the MCM included one form specification to allege larceny and another to allege embezzlement; Article 94 covered larceny and embezzlement of military property and separate specification forms were included for each; and wrongfully obtaining property by false pretenses was alleged under Article 95. *See* MCM, U.S. Army, App. 1 and App. 4 paragraphs 94, 95, 110, 111, and 120 (1928).

*ney,* 15 M.J. 779, 782 (A.C.M.R.1983). Further, the scope of Article 121, as a statute consolidating common law crimes, must be strictly construed and limited to its purpose. *Mervine,* 26 M.J. at 484; *McFarland,* 23 C.M.R. at 271; *United States v. Case,* 37 C.M.R. 606, 609 (A.B.R.1966)

The purpose of the consolidation was to modernize the military law of larceny by eliminating the technical distinctions previously involved in pleading the different types of larceny offenses. INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE, at 1232 and 1244; LEGAL AND LEGISLATIVE BASIS MANUAL FOR COURTS–MARTIAL 1951, 273, 274; *McFarland,* 23 C.M.R. at 269; *Buck,* 12 C.M.R. at 99; *United States v. Aldridge,* 2 U.S.C.M.A. 330, 8 C.M.R. 130 (1953); *Dean,* 33 M.J. at 508.

■ As the government's brief correctly asserts, under Article 121, the government no longer has to allege or elect a specific theory of larceny to prosecute a larceny offense. To plead a larceny offense, the government need only allege that an accused did "steal" the property of another.[3] *United States v. O'Hara,* 14 U.S.C.M.A. 167, 33 C.M.R. 379, 381 (1963). Further, to try the case, trial counsel need not elect a specific theory of larceny. *United States v. Aldridge,* 2 U.S.C.M.A. 330, 8 C.M.R. 130, 132 (1953). Additionally, when the military judge instructs the court members on a larceny offense, he or she need not limit instructions to a specific theory.[4] *Id.* In fact, even when the government elects a larceny theory they are unable to prove, the conviction may still be valid if the government succeeds in putting forth evidence that proves another the-

ory of larceny or the military judge obtains admissions from the accused in a guilty plea inquiry that satisfy the elements of proof of another theory. *See, e.g., United States v. Banda,* ACM S28444, 1992 WL 97151 (A.F.C.M.R. 10 April 1992); *United States v. Carraway,* 5 C.M.R. 602 (A.F.B.R.1952).

■ However, in order for a larceny conviction to be valid, the government must prove, or the accused must admit, conduct that amounts to a larceny. Specifically, the government must prove that the accused: *"wrongfully took, obtained, or withheld* certain property from the possession of the owner ..." (emphasis added). MCM, Part IV, paragraph 46b(1)(a) (1984); Article 121(a), UCMJ; *O'Hara,* 33 C.M.R. at 381. Problems arise with larceny convictions when the evidence put forth at trial or the accused's admissions in a guilty plea inquiry do not establish that the accused engaged in conduct that amounts to any larceny under Article 121, i.e., no wrongful taking, obtaining, or withholding of property of another. *See, e.g., United States v. Meeks,* 32 M.J. 1033 (A.F.C.M.R.1991); *United States v. Harrison,* 32 M.J. 1027 (A.F.C.M.R.1991); *United States v. Watkins,* 32 M.J. 527 (A.C.M.R.1990).

### I

### Larceny of the Pioneer CD Player— Wrongful Withholding

In the case before us, the military judge conducted his guilty plea inquiry using the theory of a wrongful withholding larceny. However, the stipulation of fact and the inquiry do not establish a larceny by wrongful withholding or, for that matter, any other type of larceny.

---

**3.** Compare this allegation with that required prior to enactment of Article 121, where the government had to elect a theory and specify that theory in the specification alleging the offense. *See* MCM, U.S. Army, App. 4, paragraphs 94 and 95 (1928).

**4.** While no election is required, we have found that failing to proceed with some theory in mind usually confuses the participants and the court members. The military judge ends up giving instructions on all three possibilities, i.e., that the accused wrongfully took, obtained or

withheld the property and then must engage in long explanations of the meaning of all three. The better course of action would be to choose a theory, narrow the issues, and avoid confusion. Further, when a military judge instructs on a general theory of larceny, there is a danger the court members could reach a finding of guilty on a theory that is inapplicable to the facts of a particular case. *See O'Hara,* 33 C.M.R. at 382; *United States v. Roberson,* 12 U.S.C.M.A. 719, 31 C.M.R. 305, 308 (1962); *Sicley,* 20 C.M.R. at 126.

Not every withholding of property from an owner or another person is a larceny. The withholding must be wrongful in some way. This offense has its origin in embezzlement, and the wrongfulness is established by the relationship between the owner of the property and the withholder of that property. *McFarland,* 23 C.M.R. at 270; MCM paragraph 200a(1) (1951); MCM, Part IV, paragraph 46c(1)(a) (1984). That relationship creates an obligation or duty on the part of the holder to return, account for, or deliver the property to the owner or to use the property in a certain manner. A larceny results when the holder of the property fails to return, account for, or deliver the property when a return, accounting, or delivery is due; or when the holder devotes the property to a use not authorized by the owner. MCM, Part IV, paragraph 46c(1)(b) (1984).

The crime of embezzlement occurred when a person misappropriated to his own use property initially entrusted to him because of a contractual arrangement, or an employment, custodial, or bailment relationship with the owner. *Moore v. United States,* 160 U.S. 268, 269–270, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895); *United States v. Whitlock,* 663 F.2d 1094, 1098 (D.C.Cir. 1980); MCM, U.S. Army, paragraph 443VIII (1921); MCM, U.S. Army, paragraph 149h (1928). Embezzlement differed from common law larceny in that the original taking of the property was lawful and with the consent of the owner. *Id.* As the gist of the offense was a breach of trust, the crime required some type of entrusting or fiduciary relationship between the owner and the withholder, and that the withholder acquired the property by virtue of the rela-

tionship.[5] *Moore,* 160 U.S. at 269, 16 S.Ct. at 295; *Whitlock,* 663 F.2d at 1098; INDEX AND LEGISLATIVE HISTORY: UCMJ, at 1245.

■ After enactment of Article 121, the offense of larceny by wrongful withholding still requires the same type criminal conduct originally covered by the crime of embezzlement. *United States v. Hubbard,* 28 M.J. 203 (C.M.A.1989); *United States v. Leslie,* 13 M.J. 170, 171 (C.M.A.1982); *United States v. Ford,* 12 U.S.C.M.A. 3, 30 C.M.R. 3 (1960); *McFarland,* 23 C.M.R. at 270. The requirement for a fiduciary or custodial relationship remains. *Hubbard,* 28 M.J. at 205; *McFarland,* 23 C.M.R. at 270; *Watkins,* 32 M.J. at 529; *United States v. Castillo,* 18 M.J. 590, 597 (N.M.C.M.R.1984); *United States v. Fasnacht,* 35 C.M.R. 508, 510 (A.B.R.1964); *United States v. Acfalle,* 30 C.M.R. 845 (A.F.B.R.1960).

Because of its origin in embezzlement, most of the early military cases discussing larcenies by wrongful withholding referred to the required relationship between owner and holder as a "fiduciary" relationship. *See, e.g., McFarland,* 23 C.M.R. at 270; *Acfalle,* 30 C.M.R. at 851. Later cases discuss "custodial" as well as "fiduciary" relationships. *See, e.g., Hubbard,* 28 M.J. at 205; *Leslie,* 13 M.J. at 171. A common thread running through all the cases is that the duty on the withholder to return, account for, or deliver the property must be more than some vague moral responsibility. *See, e.g., United States v. Davis,* 13 U.S.C.M.A. 125, 32 C.M.R. 125 (1962); *United States v. Rhyns,* 31 M.J. 922 (A.C.M.R.1990); *Castillo,* 18 M.J. at 597;

5. *Sicley* seems to convey an impression that a fiduciary or special relationship may not be necessary for a conviction for wrongful withholding. *See* 20 C.M.R. at 124. However, any possible misconception in that regard was completely disavowed in *McFarland. See* 23 C.M.R. at 270. Further, this is clearly contrary to the legislative history of Article 121 as expressed in the following exchange at the legislative hearings:

Mr. Elston. Well, of course, in order to convict of embezzlement there has to be not only agency but the property must have come into his possession by virtue of his agency. The mere fact that he is employed by the Government or the fact that some property came into his possession would not make him guilty of embezzlement unless it came into his possession by virtue of his agency....

Mr. Larkin. That is right. But the question of agency hinges on the fact, does it not, that the custody he has over it is a lawful one. Whether it is a full-blown agent or whether it is an agent for purposes of custody is immaterial. It is the lawful custody.

INDEX AND LEGISLATIVE HISTORY: UCMJ, at 1245.

*United States v. Purtell,* 50 C.M.R. 641 (A.F.C.M.R.1975); *United States v. Kopp,* 15 C.M.R. 815 (A.F.B.R.1954). It must be grounded in some sort of legal obligation on the part of the withholder or an entrusting of the property to the withholder for a specific purpose. The legal obligation or entrusting of property arises from the special relationship between the withholder and the owner of the property. For example, special relationships supporting a wrongful withholding were found for an employee responsible for the employer's payroll or goods,[6] a bailor responsible for the goods of a bailee,[7] a renter of property responsible to return the rented property,[8] a military custodian of property responsible to safeguard that property,[9] a mail clerk responsible for delivering the mail or safeguarding currency and money orders,[10] a shipping clerk entrusted with the shipment of urine samples,[11] an officer responsible for soldier's deposits,[12] and a service member entrusted with the funds of other service members for safeguarding or for a particular use.[13]

Appellate government counsel contend that larceny by wrongful withholding is broader than embezzlement. First, they maintain that, contrary to embezzlement, a person can be guilty of wrongful withholding larceny by merely forming an intent to steal after acquiring property lawfully without the need for any proof of a fiduciary or other special relationship between the thief and the owner of the property.

They assert that a person who comes into possession of another's property indirectly, such as acquiring it from the thief or a finder, and who then withholds that property with the intent to appropriate it to his own use commits a larceny. Second, as another indication of the broader approach permitted under Article 121, the government maintains that a wrongful withholding larceny can occur even when the alleged thief acquires the property unlawfully.

The government cites no cases that directly support their general withholding theory.[14] In fact, the cases have specifically rejected such a concept. *O'Hara,* 33 C.M.R. at 382; *Sicley,* 20 C.M.R. at 126. Additionally, our senior court has stated repeatedly that: (1) Article 121 did not create any new offenses and, (2) as a statutory consolidation of common law offenses of larceny, Article 121 must be construed strictly. *See, e.g., Mervine,* 26 M.J. at 483, 484; *McFarland,* 23 C.M.R. at 269, 271; *Buck,* 12 C.M.R. at 99; *see also* C. Torcia, WHARTON'S CRIMINAL LAW § 394 (14th ed. 1980).

 Allowing use of such a general theory of withholding would permit a finding of guilt of larceny when a person came into possession of stolen property or when a debtor-creditor relationship more properly characterized the relationship between a provider and the holder of property. However, a person who comes into possession

---

6. *United States v. Robinson,* 7 C.M.R. 618 (A.F.B.R.1952).

7. *United States v. Khoury,* 27 C.M.R. 816 (A.B.R. 1959) (Accused was entrusted with another soldier's wallet because the other soldier's locker was broken).

8. *United States v. Atwell,* 7 M.J. 1011 (N.M.C.M.R.1979).

9. *United States v. Hubbard,* 28 M.J. 203 (C.M.A. 1989); *United States v. Leslie,* 13 M.J. 170, 171 (C.M.A.1982); *United States v. O'Hara,* 14 U.S.C.M.A. 167, 33 C.M.R. 379 (1963); *United States v. Crowell,* 9 U.S.C.M.A. 43, 25 C.M.R. 305 (1958).

10. *United States v. Speer,* 2 M.J. 1244 (A.F.C.M.R.1976); *United States v. McGregor,* 6 C.M.R. 709 (A.F.B.R.1952).

11. *United States v. Batiste,* 11 M.J. 791 (A.F.C.M.R.1981).

12. *United States v. Roberto,* 31 C.M.R. 349 (A.B.R.1961).

13. *United States v. Cody,* 8 C.M.R. 594 (N.B.R. 1953).

14. We have reviewed over 70 military cases where larceny by wrongful withholding was discussed. None upheld a conviction for a larceny by wrongfully withholding without a fiduciary, custodial, or similar entrusting of property relationship existing between the owner of the property and the thief.

of another's property after it has been stolen or found by another person cannot be found guilty of a larceny by wrongful withholding even if he holds the property with the intent to appropriate it to his own use. *Davis*, 32 C.M.R. at 126 (1962); *United States v. Roberson*, 12 U.S.C.M.A. 719, 31 C.M.R. 305, 308 (1962); *Fasnacht*, 35 C.M.R. at 510. Further, acts constituting unlawfully receiving, buying, or concealing stolen property are not included within the meaning of "withholds." MCM, Part IV, paragraph 46c(1)(b) (1984). Additionally, a mere withholding of property in conjunction with an intent to appropriate property to one's own use will not constitute larceny in cases where the alleged thief is a debtor with an obligation only to repay. *Mervine*, 26 M.J. at 484; *Sicley*, 20 C.M.R. at 126.

The government also cites no case to support its contention that a wrongful withholding can occur even when a person acquires the property unlawfully. As we noted in *Dean*, 33 M.J. at 509, the statement contained in paragraph 46c(1)(b), Part IV, MCM 1984 that possession can be acquired unlawfully as well as lawfully, has very limited applicability. This provision only accounts for cases when a person initially wrongfully takes property but has a defense to larceny by wrongful taking. Under these circumstances, a subsequent conversion of the property to his own use becomes a wrongful withholding. *O'Hara*, 33 C.M.R. at 381 (alternate custodian took property to teach the custodian a lesson and later decided to withhold it). However, with the rare exception provided in *O'Hara*, acquiring property unlawfully is larceny by wrongful taking or obtaining and not larceny by wrongfully withholding. *See United States v. Jones*, 13 U.S.C.M.A. 635, 33 C.M.R. 167, 170 (1963); *McFarland*, 23 C.M.R. at 270; *Watkins*, 32 M.J. at 529; *Castillo*, 18 M.J. at 595.

Some relationships between a place of business and its customer may establish the required duty necessary to support a wrongful withholding larceny. In fact, a larceny by wrongful withholding may arise in the context of rentals of property from a business. *See, e.g.*, MCM, Part IV, paragraph 46c(1)(f)(i) (1984). In that instance, the contractual relationship between the lessor and lessee imposes a duty to return the rented property at the end of the rental arrangement. That duty to return imposes upon the lessee sufficient legal obligation to make the failure to return a larceny.

The purchase of an item at a retail store carries with it no duty to return, account for, or deliver the purchased property back to the seller. The purchaser becomes the owner of the property at the time of purchase, and the seller no longer has any property right in the property after completion of the sale. If a retailer negligently mismarks the price on an item and the buyer obtains a "bargain" as the result of the purchase, this does not establish a duty to return and does not make appellant's failure to return a criminal act. *See United States v. Pond*, 17 U.S.C.M.A. 219, 38 C.M.R. 17, 22 (1967); *United States v. Vorda*, 34 M.J. 725, 727 (N.M.C.M.R. 1991). Certainly, if the buyer subsequently becomes aware of the seller's mistake, he may have a moral obligation to return to the seller's place of business and inform the seller. However, his failure to do so does not transform his purchase into a criminal act.

## Wrongful Taking

As an alternative theory, appellee argues that appellant's conduct amounts to a larceny by wrongful taking of the Pioneer CD player. They assert two possible theories of a wrongful taking. First, that the Eglin Air Force Base Exchange mislaid or lost the property that appellant wrongfully took. Second, that the facts support a wrongful taking as a result of the Exchange's unilateral mistake.

We are unable find any support for appellee's first theory. Larceny by wrongful taking comes from the common law offense of larceny. *McFarland*, 23 C.M.R. at 269; *Buck*, 12 C.M.R. at 99, 101; MCM, Part IV, paragraph 46c(1)(a) (1984); MCM, paragraph 200a(1) (1951). Under common law, larceny required the stolen property be taken by a trespass; i.e., against the will or without the consent of the owner or by

trick or fraud. *Buck,* 12 C.M.R. at 101; *Tenney,* 15 M.J. at 781; C. Torcia, WHARTON'S CRIMINAL LAW AND PROCEDURE § 355 (1980). Although the common law concept of trespass is no longer strictly followed, present military law still requires a larceny by wrongful taking to occur without the consent of the owner of the property or by trick or fraud. *Buck,* 12 C.M.R. at 101; *Castillo,* 18 M.J. at 595; *Tenney,* 15 M.J. at 782; MCM, Part IV, paragraphs 46c(1)(b) and 46c(1)(d) (1984). Appellant acquired the property in this case through a commercial transaction with the Exchange. He did not find property that was lost or mislaid. The property he acquired was on the shelves of a store purportedly offered for sale and appellant bought it. He engaged in no trick or fraud to take the CD player.

▆ Larceny through a unilateral mistake also does not apply in appellant's case. While the government is correct that a mistake by the exchange allowed appellant to acquire the Pioneer CD player at a price much less than its true value, the remainder of the facts do not support this larceny theory.

The concept of larceny through a unilateral mistake on the part of the owner of property has its origins in English common law. *See Regina v. Middleton,* 28 Law Times (N.S.) 777, 12 Cox C.C. 417 (1873); *Rex v. Mucklow,* 168 Eng.Rep. 1225 (Cr. Cas.Res.1827). A larceny by unilateral mistake is based on the rationale that a property owner has no intent to consent to the transfer of title when he is under mistake. *United States v. Posner,* 408 F.Supp. 1145 (D.Md.1976), *aff'd* 551 F.2d 310 (4th Cir.1977), *cert. denied,* 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977); *Sapp v. State,* 157 Fla. 605, 26 So.2d 646 (1946); *Territory v. Lee,* 29 Haw. 30 (1926); *Wolfstein v. People,* 6 Hun. 121 (N.Y.1875).

A larceny by a constructive trespass occurs when the owner mistakenly gives the taker more than the taker was due *and the taker discovers the error before he acquires lawful possession,* but, without disclosing the error, takes the excess with the intent of converting it to his own use. *Posner,* 408 F.Supp. at 1151; 50 Am.Jur.2d, *Larceny* § 26 (1970).

▆ From the very beginning, a distinction has been made between cases where the taker of the property realizes the mistake at the time he takes the property and forms the intent to steal at that time and the taker who does not realize the mistake and form the intent until sometime later. A recipient of property who is unaware of a mistake upon receipt, learns of the mistake later, and, at the time the mistake is realized, forms the intent to keep the overpayment is not guilty of larceny.[15] *Compare Posner,* 408 F.Supp. 1145; *United States v. Rogers,* 289 F.2d 433 (4th Cir.1961); *Sapp,* 26 So.2d 646; *Middleton,* 12 Cox C.C. 417 (depositor or check casher at bank or postal facility obviously receives more money that he should have) *with Cooper v. Commonwealth,* 110 Ky. 123, 60 S.W. 938 (1901); *Rex v. Mucklow,* 168 Eng. Rep. 1225 (1827) (recipient of delivery of mistaken amount of money does not discover mistake until later and then decides to keep the money). The law is well settled, both in the United States and England, that when the mistake is mutual and the recipient is innocent of wrongful purpose at the time of his initial receipt of the overpayment, its subsequent conversion by him is not larceny.[16] *Rogers,* 289 F.2d at 439; *Sapp,* 26 So.2d 646; *Cooper,* 60 S.W. 938; *Bailey v. State,* 58 Ala. 414 (1876); *Regina v. Flowers,* 16 Q.B. 643 (1886); *Regina v. Jacobs,* 18 Cox C.C. 267 (1872). The difference results from the nature of the trespass. A larceny through unilateral

---

**15.** An exception exists for erroneous deposits to bank accounts and receipt of checks with a mistaken amount of overpayment. A larceny will occur if the account holder or recipient of the check has an intent to steal when he cashes the check or withdraws the deposited money. See *United States v. Moreno,* 23 M.J. 622 (A.F.C.M.R.1986), *pet. denied,* 24 M.J. 348 (C.M.A.1987); *United States v. Thaggard,* 354 F.2d 735 (5th Cir.1965); *Cook v. State,* 196 Tenn. 104, 264 S.W.2d 571 (1954).

**16.** It may be embezzlement or larceny by wrongful withholding if a fiduciary relationship or other relationship of a custodial or entrusting nature exists between the owner and the taker.

mistake results from a constructive trespass rather than an actual trespass. *Posner*, 408 F.Supp. at 1151; 50 Am.Jur.2d, § 26. If the initial taking is an actual trespass, i.e., without consent of the owner, the trespassory nature of the taking continues and will coincide with a later formed intent to steal to complete the larceny. C. Torcia, WHARTON'S CRIMINAL LAW § 362 (14th ed. 1980). However, if the initial taking is through mistake or other constructive trespass, no continuing trespass exists, and the taker's later decision to appropriate the property to his own use does not result in a larceny through wrongful taking. *Id.*

As the facts show, appellant bought the box containing the Pioneer CD player unaware of the contents of the box. A mutual mistake occurred at the time appellant acquired lawful possession of the Pioneer CD player; a larceny based on unilateral mistake did not occur. Therefore, while one may consider appellant's "taking advantage" of the exchange's mistake as morally improper, it does not amount to a larceny by wrongfully taking.

 Appellant's conduct in purchasing the Pioneer CD player was not a larceny.[17] The facts elicited from him do not provide a factual basis to support his plea of guilty to a larceny. R.C.M. 910(e). The finding of guilty to specification 2 of the Charge is set aside and that specification is dismissed.

## II

### Larceny of the Audiovox CD Player

The government contends appellant stole the Audiovox CD player from the Exchange by taking it without their consent. They assert this happened when appellant knowingly took advantage of the Exchange's mistake and took the property with the intent to steal.

### Unilateral Mistake

 Appellee makes a good argument that appellant's purchase of the Audiovox CD player falls within the rationale of larceny through unilateral mistake. At the time appellant bought the CD player, he was aware that it was mistakenly contained in a box marked with a price lower than its true value. However, we decline to apply larceny by unilateral mistake to this case for two reasons.

First, we can find no case applying larceny by unilateral mistake to a mistake due to the negligence or inattentiveness of a retail merchant in pricing an item for sale. All the cases applying the unilateral mistake theory of larceny apply to banks or other financial institutions making mistakes in cashing checks, withdrawal of deposits, or in depositing money to a depositor's account. *See Posner*, 408 F.Supp. 1145; *Rogers*, 289 F.2d 433; *Sapp*, 26 So.2d 646. The only reference we can find to application of unilateral mistake in a retail environment is an old English case where a merchant gave back the wrong amount of change and was prosecuted for larceny after the customer demanded the rest of his money without avail. The court held no larceny was committed. *Regina v. Jacobs*, 18 Cox C.C. 267 (1892).

Second, we have two military cases with facts closely parallel to appellant's both indicating that no larceny occurs when a customer knowingly buys an item with an incorrect price from a retail establishment unless the customer switched price tags or otherwise changed the price.

In *United States v. Pond*, a court-martial convicted Lieutenant Pond of larceny based on the testimony of a witness that he had switched the price tag on a muffin tin from $1.80 to $1.00. 17 U.S.C.M.A. 219, 38 C.M.R. 17, 19 (1976). Pond admitted he knew the correct price of the item was $1.80, but denied switching the price tag. The defense also elicited some evidence

---

**17.** Although the government does not argue that appellant's conduct constituted a larceny of obtaining by false pretense, we have also considered this possibility. At the time he paid for the Pioneer CD player, appellant had not switched price tags or boxes and was not mis- representing the actual price of the item he took to the checkout. Therefore, he engaged in no false pretense to obtain the item. See *Pond*, 38 C.M.R. at 23; *Vorda*, 34 M.J. at 727; MCM, Part IV, paragraph 46c(1)(e) (1984).

that price tags were known to come off merchandise and that price tags on identical items in the store were often mismarked. When defense counsel sought to introduce further evidence concerning mismarking of prices, the law officer refused to allow the evidence. On appeal the larceny conviction was reversed. One of the reasons for reversal was the error of the law officer in curtailing the presentation of evidence that was the "central facet of the defense case" and which would contradict "*prima facie* evidence of a *corpus delicti*" of a larceny. *Pond*, 38 C.M.R. at 20, 23.

A more recent case, *United States v. Vorda*, 34 M.J. 725 (N.M.C.M.R.1991), also considered the issue of larceny of an item with an incorrect price. Seaman Vorda observed a video camera on display with a price of $1,199.00. Later, he found the same item in a box marked with a price of $270.00. Knowing the price to be incorrect, he took it to the checkout and purchased it for $270.00. After pleading guilty, Vorda was convicted of wrongful appropriation of the video camera. On appeal, the Court found insufficient factual basis for the guilty plea and set aside the conviction. *Vorda* 34 M.J. at 727.

### Obtaining by False Pretense

▇▇ The *Vorda* Court noted Article 121 combined into one statutory proscription the previously existing offenses of larceny, obtaining property by false pretenses, and embezzlement; and its terms must be interpreted according to the previous definitions of those offenses. 34 M.J. at 726, citing *United States v. Mervine*, 26 M.J. 482 (C.M.A.1988). In the analysis accompanying their decision, the Court concentrated on whether Seaman Vorda committed a larceny by false pretense. Finding no false representation instigated by Vorda, they concluded larceny by false pretense did not apply to the fact situation presented. We agree with the *Vorda* Court's analysis.

A false pretense used to wrongfully obtain the property of another may occur by an act, word, symbol, or token. MCM, Part IV, paragraph 46c(1)(e) (1984). A false pretense may be a false representation of past or existing fact. *Id.* The false pretense

need not be the sole cause inducing the owner to part with the property, but it must be an effective and intentional cause of the obtaining. *Id.* To commit a crime of larceny, the false pretense must exist at the time the property is obtained. *Rhyns*, 31 M.J. at 926; MCM, Part IV, paragraph 46c(1)(e) (1984).

As a general rule, the pretense must be made by the person obtaining the property or his accomplice or co-conspirator. C. Torcia, WHARTON'S CRIMINAL LAW § 424, 428 (14th ed. 1980). A false pretense may also occur through silence or failure to correct a known misrepresentation of another if the accused is under a legal duty to speak. *Id.* at § 428. Further, if the silence is preceded by a prior act or statement by the accused that is a material factor in causing the owner to relinquish his property, the crime of larceny by false pretense may occur. *See Vorda*, 34 M.J. at 726; *United States v. Flowerday*, 28 M.J. 705, 708 (A.F.C.M.R.1989); R. Perkins, PERKINS ON CRIMINAL LAW, 381 (3d Ed.1982).

We would affirm appellant's conviction if he had changed the price tag or switched the Audiovox CD player from one box to another. In both those cases, the switching of price is a false pretense, and there is precedent for upholding a larceny conviction. *See United States v. Pellegrini*, 24 M.J. 659 (A.F.C.M.R.1987); *United States v. Lewis*, 13 M.J. 561 (A.F.C.M.R.1981). However, like Seaman Vorda's case, the misrepresentation of fact occurred when an Exchange employee placed the CD player in a box with an incorrect price. Further, there is no evidence in the record to suggest appellant made any statements to the cashier or any other Exchange employee confirming the correctness of the price on the box that could be construed as a false pretense. As in *Vorda*, appellant merely took the item to the cashier and paid the full amount requested for the purchase.

### Conclusion

Again, however morally reprehensible or unethical one may consider appellant's conduct in taking advantage of the Exchange's mistake, his conduct was not criminal. Ap-

pellant did not commit a larceny by purchasing the Audiovox CD player from the Eglin Air Force Base Exchange. The facts elicited from him during his guilty plea inquiry and the facts provided in his stipulation of fact do not provide a factual basis to support his plea of guilty to a larceny. R.C.M. 910(e). The findings of guilty to specification 1 of the Charge, the Charge, and appellant's sentence are set aside. Specification 1 and the Charge are dismissed.[18]

Judges RIVES and JAMES concur.

---

**18.** We have deliberately dismissed both specifications and the Charge because appellant's conduct is not a larceny under any possible theory and a rehearing on the charged larceny offenses is not feasible.