**UNITED STATES**

v.

**Senior Airman Anthony M. ANTO-NELLI, FR532–54–9447, United States Air Force.**

**ACM 28856 (f rev).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 May 1990.

Decided 14 July 1993.

Appellate Counsel for the Appellant: Colonel Terry J. Woodhouse, Major Mary C. Yastishock, and Major George F. May.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Lieutenant Colonel Jeffery T. Infelise and Major John H. Kongable.

Before LEONARD, JAMES and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT UPON FURTHER REVIEW

LEONARD, Senior Judge:

Once again we consider whether a larceny of basic allowance for quarters (BAQ) can occur by a wrongful withholding. Appellant's case has been returned to us with instructions to reconsider our original opinion setting aside a portion of his larceny conviction.[1] To decide this case, we must review military larceny law, statutory entitlement to pay allowances, regulatory provisions implementing the statutes, court decisions concerning the characteristics of allowances, and the applicability of bailment and wrongful conversion to allowances erroneously paid to a military member. After such consideration, we reaffirm our original decision finding insufficient evidence to support a conviction for larceny by wrongfully withholding.

### I. Facts.

During findings, the government's only evidence consisted of a stipulation of fact, two Air Force Forms 987, Recertification of Basic Allowance for Quarters (BAQ) Variable/Rent Plus Housing Allowance (VHA/RPHA), and two tables showing the difference between appellant's BAQ and variable housing allowance (VHA) with dependents and without dependents. The stipulated facts were:

From December 1973 until February 1976, the accused was married to Robin Goede, and they had one child, Jennifer, born on 20 January 1974.

In November 1975, a decree was entered dissolving the marriage of Senior Airman Antonelli and Robin. At that time, Robin was awarded custody of Jennifer, and the accused was ordered to pay child support in the monthly amount of $125.00 until January 1992 (when Jennifer turns 18).

Robin lived with her mother in San Raphael, California, from June 1975 until August 1975. In August 1975, she moved to 181 Tahoe Place, San Raphael, California, and resided there until August 1976. In August 1976, Robin moved from California to Spokane, Washington. In February 1977, she moved back to San Raphael and lived with her mother. In July 1977, she moved to Oklahoma City, Oklahoma, and shortly thereafter married Robert Brown. In January 1979, Robert and Robin Brown moved with Jennifer to Norman, Oklahoma. When Robin moved she always left a forwarding address (forwarding addresses are maintained by the post office for one year). Robin's mother lived in San Raphael until December 1979, when she moved to Willitz, California.

In August 1980, Robert Brown initiated a step-parent adoption of Jennifer. Mr. and Mrs. Brown did not know the whereabouts of Senior Airman Antonelli and accomplished the adoption of Jennifer by publishing notice of the adoption in the Norman, Oklahoma, area newspaper. At no time subsequent to the adoption did either Mr. or Mrs. Brown attempt to notify Senior Airman Antonelli of this adoption and Robin does not believe that Senior Airman Antonelli even knew his daughter was adopted until after the investigation of these charges began.

---

1. Our original decision was unpublished. *United States v. Antonelli*, ACM 28856, 1991 WL 85311 (A.F.C.M.R. 19 April 1991).

In November 1986, Robin moved with Jennifer from Norman, Oklahoma, to Greeley, Colorado. None of the individuals (Robin, Jennifer, and Senior Airman Antonelli) have had contact with each other since 1975.

Between 1977 and the present, Robin has received no child support for Jennifer from Senior Airman Antonelli, although Senior Airman Antonelli attempted on two occasions to establish an allotment for this purpose. Effective December 1981, Senior Airman Antonelli started an allotment to 181 Tahoe Place, San Raphael, California, for $125.00 in the name of Jennifer Antonelli. Then effective March 1982, Senior Airman Antonelli started an allotment for Robin Goede at 151 Tahoe Place, San Raphael, California. In both cases the allotments were returned because Robin had moved from the address to which the allotments were directed.

On 4 November 1987, Senior Airman Antonelli signed an Air Force Form 987 (Prosecution Exhibit 1) recertifying that he was providing adequate support for his daughter, Jennifer, which also allowed him to continue to draw BAQ and VHA at the with dependent rate.

While facing the larceny charge and the false official statement charge of 4 November 1987, in this court-martial, Senior Airman Antonelli was directed to accounting and finance to take care of his BAQ recertification. Senior Airman Antonelli recertified his support for Jennifer on an Air Force Form 987 (Prosecution Exhibit 2) on 27 September 1989. From 1977 to January of 1990, Robin had not been paid child support by Senior Airman Antonelli for Jennifer, and since 1977 Jennifer never lived with Senior Airman Antonelli.

From December 1986 until September 1989, Senior Airman Antonelli received BAQ and VHA at the with dependent rate.

Prosecution Exhibit 3 is a chart prepared by Tech Sergeant Gwendolyn Gordon, former chief of military pay at Lowry Air Force Base, showing how much excess BAQ the accused was drawing at the "dependent rate" versus the amount he was entitled to draw at the "single rate." Prosecution Exhibit 4 is a similar chart for VHA.

In addition to false official statements, the Government charged appellant with larceny of more than $100 during the period 1 December 1986 to 13 September 1989. Despite his not guilty pleas, court members convicted appellant of the false statement and larceny offenses.

At appellant's trial, the government relied upon a theory of larceny by wrongful withholding to support a larceny for the period 1 December 1986 through 3 November 1987. The government argued appellant committed larceny by wrongfully withholding BAQ and VHA payments in excess of the rate provided for a military member without dependents during this period.[2] When appellant's case first came before us, he contended that the government did not present sufficient evidence to support a wrongful withholding larceny conviction. We agreed and set aside the portion of appellant's larceny conviction occurring prior to 4 November 1987.

The United States Court of Military Appeals set aside the portion of our decision concerning appellant's larceny conviction and returned the case to us for reconsideration. *United States v. Antonelli*, 35 M.J. 122 (C.M.A.1992). In returning the case, the Court asked us to take another look at appellant's recertification documents and consider whether a wrongful withholding might arise from a bailment or wrongful conversion of the "with dependent" BAQ.

## II. Law and Analysis.

The statutory basis for the current military law of larceny is Article 121, UCMJ,

---

**2.** The government argued a wrongful obtaining by false pretense larceny during the period 4 November 1987 through 13 September 1989. Appellant did not contest the correctness of the conviction for this portion of the charged larceny. According to testimony admitted at the court-martial, appellant received some $3,600 in excess BAQ/VHA payments for the entire charged period of 1 December 1986 to 13 September 1989.

10 U.S.C. § 921. Before enactment of Article 121, UCMJ, the Articles of War required allegation and proof of a specific theory of larceny. Enactment of Article 121 consolidated the offenses of common law larceny by trespass, embezzlement, and obtaining property by false pretense into one statutory offense of larceny and wrongful appropriation. INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE, 1950, at 1232 (1950); *United States v. Antonelli*, 35 M.J. 122, 124 (C.M.A.1992); *United States v. McFarland*, 8 U.S.C.M.A. 42, 23 C.M.R. 266, 269 (1957); *United States v. Buck*, 3 U.S.C.M.A. 341, 12 C.M.R. 97, 99 (1953); MCM, Part IV, paragraph 46c(1)(a) (1984).

■ Consolidation of the different types of larceny offenses into Article 121 did not create any new larceny offenses that did not exist prior to the consolidation. *Antonelli*, 35 M.J. at 124, *United States v. Mervine*, 26 M.J. 482, 483 (C.M.A.1988); *McFarland*, 23 C.M.R. at 269; *Buck*, 12 C.M.R. at 99; *United States v. Sicley*, 6 U.S.C.M.A. 402, 410 n. 1, 20 C.M.R. 118, 126 n. 1 (1955); *United States v. Dean*, 33 M.J. 505, 598 (A.F.C.M.R.1991); *United States v. Chapman*, 15 C.M.R. 755, 757 (A.F.B.R.1954). Consequently, Article 121 does not criminalize conduct not previously recognized under military law as common law larceny, larceny by false pretenses, or embezzlement. *Antonelli*, 35 M.J. at 126, *Mervine*, 26 M.J. at 483; *McFarland*, 23 C.M.R. at 271; *Sicley*, 20 C.M.R. at 126 n. 1; *Buck*, 12 C.M.R. at 99; *United States v. McCanless*, 29 M.J. 985 (A.F.C.M.R.1990); *United States v. Tenney*, 15 M.J. 779, 782 (A.C.M.R.1983).

The purpose of the consolidation was to modernize the military law of larceny by eliminating the technical distinctions previously involved in pleading and proving the different types of larceny offenses. INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE, 1950, at 1232 and 1244 (1950); LEGAL AND LEGISLATIVE BASIS MANUAL FOR COURTS–MARTIAL, 273, 274 (1951); *Antonelli*, 35 M.J. at 126; *McFarland*, 23 C.M.R. at 269; *Buck*, 12 C.M.R. at 99; *United States v. Aldridge*, 2 U.S.C.M.A. 330, 8 C.M.R. 130 (1953); *Dean*, 33 M.J. at 508.

■ The government no longer has to allege or elect a specific theory of larceny to prosecute a larceny offense. To plead a larceny offense, the government need only allege that an accused did "steal" the property of another. *United States v. O'Hara*, 14 U.S.C.M.A. 167, 33 C.M.R. 379, 381 (1963); *United States v. Neff*, 34 M.J. 1195, 1199 (A.F.C.M.R.1992). Further, to try the case, trial counsel need not elect a specific theory of larceny nor limit his proof to the technicalities of a specific theory. *Antonelli*, 35 M.J. at 126; *Aldridge*, 8 C.M.R. at 132; *Neff*, 34 M.J. at 1199. Additionally, when the military judge instructs the court members on a larceny offense, he or she need not limit instructions to a specific theory. *Id.*

Although no election is required by either the trial counsel or military judge, failing to proceed with some theory in mind may confuse the participants and the court members. If the prosecution proceeds without electing a theory, the military judge may need to instruct on all three possibilities, i.e., that the accused wrongfully took, obtained, or withheld the property and then must engage in long explanations of the meaning of all three. The better course of action would be to choose a theory, narrow the issues, and avoid confusion. The court members still need "meaningful guidance in the military judge's instructions as to what they must find in order to convict under the available statutory theories of taking, obtaining, or withholding." *Antonelli*, 35 M.J. at 129 n. 6. Further, if a military judge instructs on a general theory of larceny, the court members could reach a finding of guilty on a theory that is inapplicable to the facts of a particular case. *See O'Hara*, 33 C.M.R. at 382; *United States v. Roberson*, 12 U.S.C.M.A. 719, 31 C.M.R. 305, 308 (1962); *Sicley*, 20 C.M.R. at 126.

■ If the government elects a larceny theory they are unable to prove, the conviction may still be valid if the government

succeeds in putting forth evidence that proves another theory of larceny or the military judge obtains admissions from the accused in a guilty plea inquiry that satisfy the elements of proof of another theory. *See, e.g., United States v. Banda,* ACM S28444 (A.F.C.M.R. 10 April 1992); *United States v. Carraway,* 5 C.M.R. 602 (A.F.B.R.1952). However, in order for a larceny conviction to be valid, the government must prove, or the accused must admit, conduct that amounts to a larceny. Specifically, the government must prove that the accused: *"wrongfully took, obtained, or withheld* certain property from the possession of the owner ..." MCM, Part IV, paragraph 46b(1)(a) (1984) (emphasis added); Article 121(a), UCMJ; *Antonelli,* 35 M.J. at 126; *O'Hara,* 33 C.M.R. at 381. Problems arise with larceny convictions when the evidence at trial or the accused's admissions in a guilty plea inquiry do not establish that the accused engaged in conduct that amounts to any larceny under Article 121, i.e., no wrongful taking, obtaining, or withholding of property of another. *See, e.g., Mervine,* 26 M.J. at 483–84; *United States v. Meeks,* 32 M.J. 1033 (A.F.C.M.R.1991); *United States v. Harrison,* 32 M.J. 1027 (A.F.C.M.R.1991); *United States v. Watkins,* 32 M.J. 527 (A.C.M.R.1990).

■ When a military member's larceny conviction is challenged upon appeal for a failure to state an offense or sufficiency of the evidence, the role of the appellate court "is to determine whether an accused's conduct as charged and proved could have been punished under any of the three predicate crimes encompassed by Article 121." *Antonelli,* 35 M.J. at 126. In this case, our role is simplified by the fact that the government elected a specific theory of larceny for the contested portion of the offense.[3]

Therefore we must determine whether the government proved appellant committed a larceny by wrongfully withholding the "with dependents" rate BAQ and VHA he received during the period 1 December 1986 through 3 November 1987.

## III. Larceny by Wrongful Withholding.

All three forms of larceny encompassed by Article 121 require that the property stolen belong to another. The key difference between wrongful withholding and wrongful taking or obtaining by false pretense is that the wrongful withholder originally acquires the stolen property in some lawful manner.[4] *Antonelli,* 35 M.J. at 127; W. LaFave and A. Scott, 2 *Substantive Criminal Law* §§ 8.2 and 8.6 (1986); *United States v. Rapolla,* 34 M.J. 1268 (A.F.C.M.R.1992); *Neff,* 34 M.J. at 1201–02. This offense has its origin in embezzlement and conversion, and the property is lawfully acquired through some relationship between the owner of the property and the withholder of the property. *Antonelli,* 35 M.J. at 127; *McFarland,* 23 C.M.R. at 270; MCM, paragraph 200a(1) (1951); MCM, Part IV, paragraph 46c(1)(a), (b) (1984). That relationship creates an obligation or duty on the part of the holder to return, account for, or deliver the property to the owner or to use the property in a certain manner. A larceny results when the holder of the property fails to return, account for, or deliver the property when a return, accounting, or delivery is due; or when the holder devotes the property to a use not authorized by the owner. MCM, Part IV, paragraph 46c(1)(b) (1984).

Because of its origins in embezzlement, most of the early military cases discussing larcenies by wrongful withholding referred to the required relationship between owner

---

3. Another possible theory for the government might have been obtaining by false pretense. *See United States v. Dean,* 33 M.J. 505, 511 (A.F.C.M.R.1991). However, the government presented no evidence that Antonelli made any false representation to obtain the BAQ he was paid from 1 December 1986 to 3 November 1987.

4. Our original opinion stated "the government offered no evidence to show that Antonelli *unlawfully* obtained the funds he received from 1 December 1986 through 3 November 1987." This statement was meant in a general sense i.e. there was no evidence appellant wrongfully took or obtained the funds in question. We were not stating that property wrongfully withheld must be unlawfully acquired from the true owner.

and holder as a "fiduciary" relationship. *See, e.g., McFarland*, 23 C.M.R. at 270; *United States v. Acfalle*, 30 C.M.R. 845, 851 (A.F.B.R.1960). Later cases discuss "custodial" as well as "fiduciary" relationships. *See, e.g., United States v. Hubbard*, 28 M.J. 203, 205 (C.M.A.1989); *United States v. Leslie*, 13 M.J. 170, 171 (C.M.A. 1982). For example, special relationships supporting a wrongful withholding were found for an employee responsible for the employer's payroll or goods,[5] a bailee responsible for the goods of a bailor,[6] a renter of property responsible to return the rented property,[7] a military custodian of property responsible to safeguard that property,[8] a mail clerk responsible for delivering the mail or safeguarding currency and money orders,[9] a shipping clerk entrusted with the shipment of urine samples,[10] an officer responsible for soldier's deposits,[11] and a service member entrusted with the funds of other service members for safeguarding or for a particular use.[12]

■ A common thread running through all the cases is that the duty to return, account for, deliver, or use the property for a specific purpose must be more than some vague moral responsibility. *See, e.g., United States v. Davis*, 13 U.S.C.M.A. 125, 32 C.M.R. 125 (1962); *United States v. Rhyns*, 31 M.J. 922 (A.C.M.R.1990); *United States v. Castillo*, 18 M.J. 590, 597 (N.M.C.M.R.

1984); *United States v. Purtell*, 50 C.M.R. 641 (A.F.C.M.R.1975); *United States v. Kopp*, 15 C.M.R. 815 (A.F.B.R.1954). It must be grounded in some sort of legal obligation on the part of the withholder to return or account for *another's* property or to use *another's* property for a specific purpose. However, a debt is not a proper subject of a larceny and a wrongful withholding larceny will not arise from a debtor and creditor relationship and a failure to account for or return the amount of the indebtedness. *Mervine*, 26 M.J. at 483–84.

## IV. Applying Wrongful Withholding to Appellant's Case.

■ In order to find appellant guilty of larceny of BAQ and VHA payment by wrongfully withholding, the government needed to prove that appellant had in his possession funds *owned by the government* and he wrongfully converted the funds or had a duty to account for the funds and failed to do so. *See* MCM, Part IV, paragraphs 46b(1), c(1)(b), and c(1)(d) (1984). Reviewing the evidence presented to the court members, we find the government failed to prove any government ownership right in appellant's BAQ and VHA payments, any duty to account for the BAQ or VHA payments, or any wrongful conversion of the payments.[13]

5. *United States v. Robinson*, 7 C.M.R. 618 (A.F.B.R.1952).

6. *United States v. Khoury*, 27 C.M.R. 816 (A.B.R. 1959) (Accused was entrusted with another soldier's wallet because the other soldier's locker was broken).

7. *United States v. Atwell*, 7 M.J. 1011 (N.M.C.M.R.1979).

8. *United States v. Hubbard*, 28 M.J. 203 (C.M.A. 1989); *United States v. Leslie*, 13 M.J. 170, 171 (C.M.A.1982); *United States v. O'Hara*, 14 U.S.C.M.A. 167, 33 C.M.R. 379 (1963); *United States v. Crowell*, 9 U.S.C.M.A. 43, 25 C.M.R. 305 (1958).

9. *United States v. Speer*, 2 M.J. 1244 (A.F.C.M.R. 1976); *United States v. McGregor*, 6 C.M.R. 709 (A.F.B.R.1952).

10. *United States v. Batiste*, 11 M.J. 791 (A.F.C.M.R.1981).

11. *United States v. Roberto*, 31 C.M.R. 349 (A.B.R.1961).

12. *United States v. Cody*, 8 C.M.R. 594 (N.B.R. 1953).

13. The government's proof of appellant's lack of entitlement is also sketchy. The stipulation never states appellant was not entitled to "with dependent" rate BAQ and VHA. It infers that he would be entitled to this rate only if he were supporting his child, but no more. This same inference could be drawn from the Air Force Forms 987 introduced by the government. However, they do not state the requirements for entitlement to with dependents BAQ and VHA. Some proof of a lack of entitlement was introduced before the military judge during litigation of motions, but this evidence was not presented to the court members. Without clear proof of lack of entitlement, this case may suffer the same defect we condemned in *United States v. Bost*, 34 M.J. 1094 (A.F.C.M.R.1992).

■ In sending this case back to us, the Court of Military Appeals opined that, since appellant was not entitled to the "with dependent" payments, the money from those payments remained the property of the United States. *Antonelli*, 35 M.J. at 128. The Court also stated that the certifications signed by appellant might be evidence of a duty to account or circumstantial evidence of a wrongful conversion. *Id.* However, when we examine the evidence presented at appellant's trial, the statutory entitlement for allowances, and the regulatory framework implementing the statutes, we are unable to find a bailment or any other factual basis for holding that a military allowance remains the property of the government after being paid to a service member. Further, we cannot find evidence of a duty to account for such allowances. Instead, what we find is a statutory entitlement to BAQ and VHA, a military member's duty to inform of changes in status that would affect that entitlement,[14] a responsibility by the Accounting and Finance Officer (AFO) to review changes in status and determine whether to terminate the entitlement, an indebtedness on the part of the military member for overpayments of BAQ and VHA after termination of entitlement, and an AFO duty to collect that indebtedness.

### A. Statutory and Regulatory Entitlement to BAQ and VHA.

The statutory entitlements for BAQ and VHA are 37 U.S.C. §§ 403 and 403a (1988). Section 403(a) provides: "a member of a uniformed service who is entitled to basic pay is entitled to a basic allowance for quarters." Section 403a(a)(1) provides: "a member of a uniformed service entitled to basic allowance for quarters is entitled to a variable housing allowance ... whenever assigned to ... a high housing cost area." BAQ and VHA entitlements are provided at different rates to those "with dependents" and those without dependents. *See* 37 U.S.C. § 403(b) and (i); 37 U.S.C. § 403a(a)(2); *Department of Defense Pay and Allowances Entitlements Manual* (DODPM) para. 30211 and 30221a (1987);[15] Air Force Manual 177–373 Volume I, *Joint Uniform Military Pay System (JUMPS) AFO Procedures*, paragraphs 44–31 and 44–32a (August 1987). BAQ is an entitlement of the military member to reimburse the member for the expenses of providing living quarters for himself and his dependents when government living quarters are not furnished. 37 U.S.C. § 403(b); *Hollister v. United States*, 92 Ct.Cl. 137, 1940 WL 4110 (1940). VHA is an entitlement to help service members defray housing expenses in high cost areas. H.R.Rep. No. 99–81, 99th Cong., 1st Sess., *reprinted in* 1985 U.S.C.C.A.N. 472. The BAQ entitlement statute delegates to "the Secretary concerned, or his designee," the authority to make determinations of dependency and relationships and to change or modify such determinations. 37 U.S.C. § 403(h). The President has the authority to prescribe regulations concerning administration of VHA. 37 U.S.C. § 403a(e)(1).

Since appellant's entitlement to "with dependent" VHA depended upon his entitlement to "with dependent" BAQ, from this point on we will only concern ourselves with the BAQ entitlement.[16]

---

14. A military member's failure to report a change in his status affecting his entitlement for a military pay allowance may amount to a dereliction of duty. *See Dean*, 33 M.J. at 511 n. 5; *United States v. Castillo*, 18 M.J. 590, 595 (N.M.C.M.R.1984).

15. On 31 August 1992, a revised DODPM was promulgated. All the provisions of the DODPM discussed in this opinion have identical counterparts in the revised publication.

16. Appellant's entitlement to with dependents VHA was due to a "savings provision" in the 1985 amendment to 37 U.S.C. § 403a. This amendment eliminated entitlement to "with dependents" VHA for military members entitled to with dependents BAQ because of paying child support. However, § 602(e) of Public Law 99–145 provided that military members who were so entitled to "with dependents" VHA on 30 September 1985 would have that entitlement continued until they were reassigned to another duty location. *See* AFM 177–373 Volume I, paragraph 44–36d(4). Appellant remained at Lowry Air Force Base, Colorado, from May 1983 until his court-martial in 1990.

DODPM, attachment 1, Glossary of Terms, defines "Entitlement" as: "To have the legal right to receive items of pay and/or allowances." Before "entitlement" to "with dependent" BAQ, a military member must prove he has a qualifying dependent. 37 U.S.C. § 401; DODPM para. 30224c. A qualifying dependent includes a unmarried child under 21 years of age. 37 U.S.C. § 401(2). To be entitled to payment of "with dependent" BAQ a service member only has to furnish evidence of the required dependency. DODPM para. 30224c. With respect to this determination of dependency DODPM para. 30232 provides:

A member's lawful spouse and legitimate, unmarried, minor children are at all times considered dependents for BAQ purposes.... A determination of relationship is required, but usually a determination of dependency is not.

Although proof of support is not generally required, entitlement to "with dependent" BAQ for a spouse or legitimate, unmarried, minor children will be terminated if the service member does not continue to provide support for the spouse or children. DODPM para. 30236a. When the government receives evidence of nonsupport or inadequate support for dependents, the service member will be required to furnish proof of adequate support. *Id.* If the service member refuses or fails to provide the requested proof of adequate support, the entitlement terminates and the AFO recoups payments made during periods of inadequate support. DODPM para. 30236a and Table 7–7–1.

AFM 177–373 Volume I, paragraph 42–17a, places the responsibility upon the AFO or his designated representative to advise an Air Force member during in-processing and recertification:

1. When he is entitled to BAQ and at which rate.

2. To immediately notify the AFO of any change in dependency status.

3. Failure to support a dependent will result in nonentitlement to BAQ.

4. A member is not entitled to BAQ on behalf of a dependent whose address is unknown.

5. Making a false claim or statement against the United States is punishable by court-martial and of the penalty for making a false statement or claim under 18 U.S.C. § 287.[17]

Paragraph 42–17b of AFM 177–373 Volume I, requires the AFO to review BAQ and VHA entitlements for possible stop or recoupment action when evidence of nonsupport or inadequate support of dependents is received. Before taking stop or recoupment action, the AFO is required to contact the service member to determine if support is being furnished.

Action to recoup erroneous payments or overpayments of BAQ is based upon a retroactive [18] *administrative* determination of *indebtedness* and *not* a duty to account. Statutory authority for such recoupment is contained in 37 U.S.C. § 1007(c) (1988) which provides:

Under regulations prescribed by the Secretary concerned, an amount that a member of the uniformed services is administratively determined to owe the United States ... may be deducted from his pay.

DODPM para. 70704 provides:

It shall be the policy of the military departments to collect debts owed to the Department of Defense or any of its instrumentalities or other uniformed services under 37 U.S.C. § 1007(c).

Table 7–7–1 of the DODPM provides for involuntary collection from a military member's pay of indebtedness due to erroneous payments made to or on behalf of a member of any uniformed service after an administrative determination of indebtedness. "Erroneous payment" is "a payment of pay

---

17. The Air Force Form 987 signed by appellant on 4 November 1987 satisfied advice requirements 2 and 5. No evidence was presented to the court members that appellant ever received the other required advice.

18. AFM 177–373 Volume IV, paragraph 3–8.

and/or allowances to a member to which he or she is not entitled." DODPM, attachment 1, glossary of terms.

DODPM Table 7–7–2 provides for involuntary collection from the pay of accountable officers and enlisted persons. Collection under this table is reserved for cases where the officer or enlisted member fails to account for funds entrusted to him or converts public funds to his own use. *See* DODPM, Table 7–7–2, rules 1 through 5. This table applies to officers and enlisted members who are entrusted with public funds such as disbursing officers, military postal clerks, cashiers, and others intrusted with public funds for small purchases. DODPM, Table 7–7–2, notes 1 and 2. There is no indication whatsoever that this table applies to erroneous overpayment of BAQ or VHA.

Chapter 53 of AFM 177–373 Volume I, governs Air Force collection of indebtedness from Air Force members. It specifically provides for collecting indebtedness due to overpayment of pay and allowances. *See*, paragraphs 53–1 and 53–20.

### B. Decisions Concerning Accountability for Allowances.

Court and Comptroller General decisions reinforce the above statutory and regulatory framework for entitlement, termination of entitlement, and recoupment of overpayments as indebtedness. The Court of Military Appeals pointed out to us that courts have considered allowances to be benefits in addition to regular pay. *See Antonelli*, 35 M.J. at 127 n. 3; *United States v. Ryno*, 130 F.Supp. 685, 690–91 (S.D.Cal.1955), *aff'd* 232 F.2d 581 (9th Cir.1956); *Hollister v. United States*, 92 Ct.Cl. 137, 140, 1940 WL 4110 (1940). However, the special treatment of allowances by the courts does not necessarily place upon service members any duty to account for the allowances paid

to them. In fact, the only decisions considering the issue of a duty to account for military allowances found no such duty.

In *McCarl v. Pence*, 18 F.2d 809, 57 App.D.C. 159 (1927), the court found the Comptroller General could not use a statute requiring a duty to account as the basis for recouping overpayments in quarters allowances to an Army officer. The Army officer had been overpaid more than $1600 for an alleged dependent. The government claimed the right to recoup the overpayment under Revised Statute § 1766 (Comp. St. 3239) (current version at 5 U.S.C. § 5512) that provided:

> No money shall be paid to any person for his compensation who is in arrears to the United States, until he has accounted for and paid into the Treasury all sums for which he may be liable.

The *Pence* Court held that the duty to account provided by the statute applied only to persons who hold in trust sums of public money for which they are required to account and did not authorize deductions for overpayments of pay or allowances. *Pence*, 18 F.2d at 811.[19]

At least three Comptroller General opinions have affirmed the holding of *McCarl v. Pence*. In 37 Comp.Gen. 344 (1957), the Comptroller General considered the effect of a later version of the same statute considered by *Pence*. The Comptroller General held that an enlisted member entrusted with public funds for small purchases was an accountable person under the statute and his pay could be withheld to collect any money he embezzled or failed to account for. The decision referenced *McCarl v. Pence* and noted that *Pence* did not involve accountable funds.

Another Comptroller General opinion held that advance payment of travel expense allowances were in the nature of a

---

**19.** The *Pence* decision does not explain why the Army chose to try to withhold the officer's pay under the accountability provisions of § 1766 (current version at 5 U.S.C. § 5512). However, research of the history of 37 U.S.C. § 1007 reveals that, at the time of *Pence*, the only statutory authority for involuntary collection from an officer's pay was for accountable officers under § 1766. Prior to 1928, there was no equivalent

of § 1007(c) permitting an administrative determination of indebtedness. The Act of May 22, 1928, Ch. 676, 45 Stat. 698, added a provision allowing collection from an enlisted member's pay based on an administrative determination of indebtedness by the Secretary concerned. In 1984, this provision was changed to cover all members of the uniformed services. Pub.L. 98–525, § 1305, 98 Stat. 2492 (1984).

loan and not accountable government funds. 54 Comp.Gen. 190 (1974). In another case involving overpayment of travel allowances, the Comptroller General held that a Navy officer whose pay was being withheld by the Navy to collect the overpayment could not be sued under 5 U.S.C. § 5512 as an accountable person. The decision stated:

> The scope of this provision [5 U.S.C. § 5512] is limited, however, to debts owed to the United States by federal officials known as accountable officers. Accountable officers are persons who are entrusted with or come into possession of funds of the United States Government. Such persons include disbursing officers, tax collectors, and cashiers, to name a few. They do not include persons who receive travel and transportation allowances, advances, or reimbursements, whether proper or not.

B–248376, 1993 WL 10432, 1993 U.S.Comp.Gen.Lexis 82 (January 11, 1993).

This Court also has previously considered the question of accountability and wrongful withholding in the context of overpayment of travel allowances. In *United States v. Harrison,* Chief Judge O'Brien held larceny by wrongful withholding inapplicable to a failure to return an overpayment of travel allowances. 32 M.J. 1027, 1029 (A.F.C.M.R.1991). He found that, upon payment of the advance travel allowances, Harrison had acquired title to the money and the money no longer belonged to the government. Overpayment of the travel allowances only created a civil indebtedness to the government, and failure to pay a civil debt did not equate to theft. 32 M.J. at 1028–29; *see also Mervine,* 26 M.J. at 483–84.

Although *Pence* clearly is on point, there may be some question as to whether *Harrison* and the Comptroller General decisions concerning travel allowances have any applicability to appellant's case. We believe they do. Comparing travel allowances with BAQ, we note that both types of allowances are paid to the military member for a specific purpose. The purpose of BAQ is to reimburse service members for

the expense of providing private quarters for dependents when government quarters are not furnished. DODPM para. 30236b; *Hollister,* 92 Ct.Cl. at 140. The purpose of travel allowances is to reimburse the military member for his travel or that of his dependents. *See* 37 U.S.C. §§ 404–411f. Like BAQ overpayments, travel allowance overpayments are treated as indebtedness and recouped. *See* AFM 177–373 Volume I, paragraph 53–26.

## V. Bailment and Wrongful Conversion.

We find statutory and regulatory provisions and prior decisions concerning military allowances incompatible with a wrongful withholding larceny based upon a bailment or wrongful conversion. In its decision sending this case back to us, the Court of Military Appeals correctly described a bailment as:

> [T]he delivery of personal property, including money, by one person to another in trust for a specified purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.

*Antonelli,.* 35 M.J. at 128 n. 4 (quoting from 8 Am.Jur.2d *Bailments* § 2 at 738 (1980)).

Conversion arises when someone lawfully possessing property *owned by another* devotes that property to a use not authorized by the owner. *Antonelli,* 35 M.J. at 127; MCM, Part IV, paragraph 46c(1)(b) (1984).

The concepts of bailment and conversion both require that title to the entrusted or converted property remains with someone other than the alleged wrongful withholder. The concept of bailment also requires the existence of an express or implied contract between the owner of the property and the person acting as bailee. 8 Am. Jur.2d *Bailments* § 54 at 792–93 (1980). This contract must provide for the bailee to return or account for the owner's property when the purpose of the bailment is over. 8 Am.Jur.2d *Bailments* §§ 54 and 65 at

792–92 and 802 (1980). Co-mingling of the property alleged to be the subject of the bailment with other property of the bailee negates any bailor and bailee relationship unless such commingling is required by the necessities of trade. 8 Am.Jur.2d *Bailments* § 51 at 790 (1980).

We cannot find any authority to support a government retention of title to BAQ or VHA payments after they are paid to a military member. Nor can we find any statutory, regulatory, or contractual requirement for an Air Force member to segregate his paycheck into basic pay, without dependent allowances, or "with dependent" allowances and to account for his disposition of each type separately. When the government paid appellant his pay each month, it did not send him two separate checks or make two separate direct deposits to his bank account. He received only one payment, and he was not required to segregate that payment into different funds and account for one portion and not the other. To the contrary, the statutory and regulatory provisions regarding BAQ describe it as an "entitlement" or "legal right to receive items of pay and/or allowances." 37 U.S.C. § 403(a); DODPM para. 30221a and attachment 1. Overpayment of an allowance generates no responsibility to account for the overpaid money. Instead, overpayment creates an indebtedness to the government. 37 U.S.C. § 1007(c); DODPM para. 70704 and Table 7–7–1. This concept of indebtedness for overpayments is incompatible with a retention of title or a requirement to account. If the government retained title to BAQ paid to military members, there would be no need for statutory and regulatory authority providing for collection of an indebtedness based upon overpayment of BAQ.

### VI. Conclusions.

We find insufficient evidence of either a duty to account or a wrongful conversion of the with dependent's BAQ and VHA paid to appellant for the period 1 December 1986 through 3 November 1987. Therefore, a conviction for larceny by wrongfully withholding BAQ and VHA allowances for that period is both legally and factually insufficient and must be set aside. The finding of guilty to the specification of Charge I is only approved for the period 4 November 1987 through 13 September 1989.

In our original opinion we reassessed appellant's sentence based on improper sentencing evidence and setting aside the same portion of his larceny conviction we set aside today. The portion of our opinion concerning improper sentencing evidence and our disposition of appellant's other asserted errors was not set aside upon appeal. We reaffirm the holdings of our original decision on those matters.

We again reassess appellant's sentence. Relying only on the matters properly before the members, we are satisfied we can determine the sentence the court would have adjudged if the errors had not been committed at trial. *United States v. Peoples*, 29 M.J. 426, 427 (C.M.A.1990). Upon reassessment, we approve only so much of appellant's sentence as provides for a bad-conduct discharge, confinement for 6 months, and reduction to E–1. Considering appellant's entire record, we find the reassessed sentence appropriate. Article 66(c), UCMJ, 10 U.S.C. § 866(c). The modified findings of guilty and the reassessed sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Judges JAMES and JOHNSON concur.