**UNITED STATES**

**v.**

**Airman First Class Dennis STADLER III, FR183–66–1668, United States Air Force.**

**ACM 31420.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 25 Oct. 1994.

Decided 8 May 1996.

OPINION OF THE COURT

MORGAN, Judge:

A general court-martial consisting of members convicted appellant, contrary to his pleas, of larceny of over $100 from the United States, and negligent dereliction of duty. Articles 121, 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 892. They sentenced him to a bad-conduct discharge, confinement for one year, and reduction to airman basic. Appellant brings four assignments of error, all of which we reject.

The facts giving rise to this court-martial are simple. After a short time at Kadena Air Base, Japan, appellant ran into marital discord, resulting in a decision to undergo a legal separation. Further to that decision, in April of 1993 appellant applied for and received permission to send his wife and three sons back to the United States in something called the Early Return of Dependents (ERD) program. However, once his family was returned home, appellant continued to collect a with-dependents Cost of Living Allowance (COLA), and an Overseas Housing Allowance (OHA), to which he was no longer entitled. This went on for a year, resulting in over $12,000 in overpayment.

■ Appellant first challenges his conviction for larceny, arguing that the evidence is factually and legally insufficient to sustain his conviction. He relies principally upon this Court's holding in *United States v. Antonelli*, 37 M.J. 932 (A.F.C.M.R.1993). That case was, of course, set aside at 43 M.J. 183 (1995). The United States Court of Appeals for the Armed Forces held that the enactment of Article 121 of the UCMJ had fused the different common law theories of larceny, and that the fine subtleties that had conceptually distinguished them were no longer material to guilt or innocence of larceny under Article 121. *Antonelli*, 43 M.J. at 185 (referring to *United States v. Antonelli*, 35 M.J. 122, 124 (C.M.A.1992)).

Regardless, even if our reasoning in *Antonelli* had not been repudiated by the Court of Appeals for the Armed Forces, appellant's case is easily distinguishable. Antonelli's entitlement to a Basic Allowance for Quarters (BAQ) and Variable Housing Allowance

Appellate Counsel for Appellant: Colonel Jay L. Cohen and Captain Robert E. Watson.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Colonel Thomas E. Schlegel.

Before PEARSON, SCHREIER, and MORGAN, Appellate Military Judges.

(VHA) at the "with-dependents" rate was based upon the existence of a qualified dependent *and* his support of that dependent. *Antonelli*, 43 M.J. at 185 (citing *United States v. Bulger*, 41 M.J. 194, 196 (C.M.A. 1994)). The government's theory of larceny, ultimately upheld by our superior Court, was that Antonelli's acceptance and conversion of the higher-rate BAQ and VHA constituted a wrongful withholding, where he not only failed to provide court-ordered support to his daughter, but affirmatively misled authorities that he was. *Antonelli*, 43 M.J. at 185. Here we have a much different situation. The moment appellant's family left Kadena Air Base for the United States and he moved on-base into the dormitory, his *entitlement* to OHA and the with-dependents rate COLA ceased, never mind what he did with the money after he received it.[1]

Appellant contends for the first time on appeal that, in addition, he was actually entitled to COLA, or at least that the government failed to establish that he wasn't. He then invites us on a labyrinthine tour of the enabling statutes, the DoD Pay Manual, and the Joint Federal Travel Regulation. We decline the invitation. In the first place, it is clear through reading the record that the government was referring to the "with dependents" rate of COLA, a figure which, it was developed through testimony and documentary evidence, exceeded the "without-dependents" COLA. Appellant conceded on the stand that he was not entitled to the with-dependents COLA, or to OHA. He organized his defense at trial, instead, on his assertedly mistaken belief that he was. Our own review of the record and the governing authorities cited by appellant convinces us that he was not entitled to the with-dependents COLA, and that, contrary to appellant's assertion, the government never contended he was entitled to no COLA at all. Accordingly, we are satisfied that as a matter of law the evidence supports appellant's conviction on this charge, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Moreover, we are convinced that ap-

pellant knew that he was not entitled to these allowances, and are ourselves persuaded of appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

Second, appellant argues that the military judge erred in permitting trial counsel to cross-examine him over his failure to locate and produce a witness who, presumably, would have had exculpatory evidence. Before the AFOSI and at trial, appellant contended that he was concerned that he might be receiving too much COLA, and that in June of 1993 he called the base Accounting and Finance Office (Finance) to get a reading. He claimed to have spoken to a Japanese-national woman who told him that he was entitled to COLA so long as he was still married.

Capitalizing on this alleged conversation, defense counsel grilled the AFOSI investigating case agent for not following-up on appellant's contention by interviewing different people at Finance. Appellant hitch-hiked on this theme in his testimony, declaring "I didn't think it was my responsibility to go look for her." On cross-examination, the prosecutor turned the tables, asking, "You're sitting in a general court-martial today, Airman, and the one witness that might be able to corroborate your statement ... and you didn't bother to go over and look for her?" Appellant responded that he hadn't.

Trial defense counsel timely objected to the question on the basis that it was argumentative and that it served impermissibly to shift the burden of proof, but was overruled. On appeal, he asserts this was error, citing *United States v. Mobley*, 31 M.J. 273, 279 (C.M.A.1990) and *United States v. Swoape*, 21 M.J. 414, 416–7 (C.M.A.1986). Both cases condemn a prosecutor's comment, during argument, on an accused's failure to produce witnesses in his behalf. *Mobley* is readily distinguishable. There the accused did not himself take the stand, thus rendering comment on the failure to produce *any* witnesses a comment on the failure of the accused

---

1. The appellant explained to the Air Force Office of Special Investigations (AFOSI) that, in fact, he knew he wasn't entitled to the allowances, but that he needed the extra $1,000/month to pay his wife $600/month support. Ironically, appellant's situation is the virtual mirror-image of Antonelli's.

himself to testify. But, Swoape was convicted of larceny of a car despite his claim, made from the stand, that one Seaman Russo had given him the car. The prosecutor in that case suggested that Seaman Russo, whom neither side called as a witness, was a defense invention.

Despite the factual similarities between the facts of this case and those of *Swoape,* the government asks us to approve this comment because trial counsel was merely deprecating appellant's honesty through his questioning.[2] We are aware of no authority, and the government cites none, which shields impermissible comment on an accused's rights based upon the motivation of the commentator. Irrespective of trial counsel's purpose, if we find the judge erred in overruling the defense objection, we must test for prejudice. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Mobley,* 31 M.J. at 279.

■ But we need not do so in this case. Not every comment on a failure to produce a witness, nor even of the accused to testify, triggers constitutional error, but must be examined in the context of the facts of the case. *United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988). *See also United States v. Webb,* 38 M.J. 62 (C.M.A.1993), *cert. denied,* 510 U.S. 1169, 114 S.Ct. 1201, 127 L.Ed.2d 549 (1994). Comment which is improper, standing alone, may become permissible when properly made in response to defense argument. *United States v. Espronceda,* 36 M.J. 535, 541 (A.F.C.M.R.1992). Here, appellant hinged a good portion of his defense on his professed belief, reinforced by the alleged assurance he received from a Japanese-national working at Finance, that he was entitled to COLA at the with-dependents rate. Trial defense counsel hammered away at this theme when questioning the AFOSI case agent. Under such circumstances it was not unreasonable for the prosecutor to rhetorically ask appellant why he had not troubled himself even to locate the woman who was the source of his mistaken belief.[3] While overruling the defense objection, the military judge properly instructed the court members that the burden was not on appellant to prove his innocence. He went on to explain that in permitting trial counsel's question, he distinguished between comment on failure to call a *witness,* and a pre-trial failure of the appellant even to identify who that witness might be. We are satisfied, therefore, that the military judge did not abuse his discretion in overruling the defense objection. Even if the judge had erred, and we had reached the second prong of our analysis, we are convinced appellant was in no way prejudiced by trial counsel's question and argument.

■ Next, appellant argues that he should have been permitted to introduce evidence that, possibly in response to appellant's claims, a written directive had been issued to employees of the Housing office to refer customers who were moving on-base to Finance. The military judge excluded that evidence based upon MIL. R. EVID. 407, which prohibits admission of evidence of subsequent remedial measures to prove negligence or culpable conduct. Two witnesses from the Housing office testified at appellant's trial, one called by the prosecution, one by the defense. Both agreed that, previous to appellant's trial, it had been an *unwritten* policy that members who moved on base were to be referred to Finance to effect any adjustment to entitlements based upon an on-base move. Ap-

---

**2.** Trial counsel in *Swoape* was quite clearly doing the same thing. A significant, but unwritten, component of the Court's opinion in *Swoape* may be that trial counsel suggested that Seaman Russo was a last-minute defense contrivance, when there was evidence, known to the prosecutor but suppressed by the military judge, that the defense had tried to locate Seaman Russo months before the trial. They had sent message traffic inquiring after a Seaman *Mark* Russo, aboard the USS SAIPAN, but received a negative response. It was later discovered that there was a Seaman *Mike* Russo attached to the USS SAIPAN. By contrast, there is no evidence in this case that the prosecutor acted other than in good faith.

**3.** Appellant also testified that a "civilian black lady" working in the base housing office had erroneously led him to believe that the Housing office would take care of notifying Finance in connection with his OHA entitlement. Notwithstanding that two women from the Housing office, both of whom were African–American, testified at appellant's trial, appellant claimed he could not remember which, if either of them, had been the one with whom he had spoken.

pellant wanted to introduce the fact that the policy was now written.

We note that the rule, adopted from the Federal Rule, has no antecedent in military practice, and is of limited utility in most criminal cases. *See* S. SALZBURG, L. SCHINASI & D. SCHLUETER, MILITARY RULES OF EVIDENCE MANUAL 505 (3rd ed. 1991). Its formulation rests, however, on questions of relevancy, and on public policy considerations not here germane. In this case, the relevance of the later-decision to reduce a policy to writing to the question of whether appellant had been counseled consistent with that policy is attenuated indeed. *See* R.C.M. 401. Certainly, it was not an abuse of discretion for the military judge to have ruled as he did. *United States v. Garcia,* 44 M.J. 27 (1996).

■ Finally, we dismiss summarily appellant's contention that there was insufficient evidence to establish that appellant had the duty to report to Finance the fact that his dependents had gone home. Throughout the course of the trial, appellant ignored the fact that he had signed a Statement of Understanding which, *inter alia,* declared as follows:

> I, Dennis (NMI) Stadler, understand that once my dependent departs the overseas area, on an approved early return of dependents move, the following will apply.

> 1. I am not entitled to dependent rate Overseas Housing Allowance (OHA) of (sic) Cost of Living Allowance (COLA) effective the date my dependents depart Kadena AB.

. . .

> 7. I understand that it is my responsibility to immediately notify the Accounting and Finance office of any change of status that would affect my pay and allowances. This includes, but is not limited to (1) divorce or separation agreements, (2) date dependents depart the overseas area, (3) date assigned single-type government quarters, and (4) date issued a meal card. Failure to do so may cause an overpayment for which I would be liable to repay all monies to the U.S. Government.

Appellant signed this statement on April 10, 1993, as part of his application for ERD. At trial, appellant attempted to dismiss this datum by explaining that he hadn't read it before he signed it. No matter. It not only established a clear duty, but put appellant on notice of that duty, lest there be any question. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES, Part IV, ¶ 16c(3)(a) (1984) (duty may be established by treaty, statute, regulation, lawful order, standard operating procedure, or custom of the service). *See also Antonelli II,* 37 M.J. 932, 938 n. 14.

The findings and sentence are, therefore, correct in law and in fact, the sentence is appropriate, and the same are hereby

AFFIRMED.

Senior Judges PEARSON and SCHREIER concur.