UNITED STATES

v.

**Senior Airman Christopher M. FENNER, United States Air Force.**

**ACM S29703.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 8 June 1999.

Decided 2 May 2000.

Appellate Counsel for Appellant: Major Marc A. Jones (argued), Colonel Jeanne M. Rueth, Lieutenant Colonel James R. Wise, and Captain Karen L. Hecker.

Appellate Counsel for the United States: Major Bryan T. Wheeler (argued), Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major Jennifer R. Rider.

Before SNYDER, Chief Judge, YOUNG, Senior Judge, and SPISAK, Senior Judge.

## OPINION OF THE COURT

SPISAK, Senior Judge:

The appellant pled guilty to three specifications of dereliction of duty and six specifications of making and uttering worthless checks in violation of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934. He pled not guilty to three specifications of larceny in violation of Article 121, UCMJ, 10 U.S.C. § 921. A military judge found him guilty of all charges and specifications. The appellant's approved sentence consists of a bad-conduct discharge, confinement for 4 months, forfeiture of $639.00 per month for 4 months, and reduction to E-1. He asserts that the evidence is factually and legally insufficient to support a finding of guilty to the larceny specifications.[1] We set aside some of the findings, but otherwise affirm.

### I. THE LAW

■ Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only those findings of guilt that we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, a reasonable factfinder could have found the appellant guilty of all elements of the offense, beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *United States v. Ladell*, 30 M.J. 672, 673 (A.F.C.M.R.1990). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325.

The statutory basis for larceny is Article 121, UCMJ, 10 U.S.C. § 921. That Article consolidates the offenses of common law larceny by trespass, embezzlement, and obtaining property by false pretense into one statutory offense of larceny and wrongful appropriation. INDEX AND LEGISLATIVE HISTORY: UNIFORM CODE OF MILITARY JUSTICE, 1950, at 1232 (1950);

---

1. We heard oral argument on this issue at Howard University School of Law, Washington, DC, on 12 April 2000 as part of this Court's Project Outreach.

*United States v. Antonelli*, 35 M.J. 122, 124 (C.M.A.1992).

## II. DISCUSSION

■■■ The government need not allege or even elect a specific theory of larceny to prosecute an offense under Article 121. Rather, the government need only allege that an accused did "steal" the property of another. *United States v. O'Hara*, 33 C.M.R. 379, 381, 1963 WL 4872 (C.M.A.1963); *United States v. Antonelli*, 37 M.J. 932 (A.F.C.M.R. 1993), *rev'd on other grounds*, 43 M.J. 183 (1995); *United States v. Neff*, 34 M.J. 1195, 1199 (A.F.C.M.R.1992). Moreover, "[i]f the government elects a larceny theory they are unable to prove, the conviction may still be valid if the government succeeds in putting forth evidence that proves another theory of larceny...." *Antonelli*, 37 M.J. at 935–936. When the sufficiency of evidence to support a charge of larceny is challenged on appeal, our role is to determine whether the conduct charged and proved could be punished under any of the three predicate crimes encompassed by Article 121. *Antonelli*, 35 M.J. at 126.

A. Charge II, Specifications 1 and 2, Larceny of September Rent and Utilities Payments

The appellant was the lessee of an off-base house. He had three roommates, SrA Bohl, SrA Gunnels, and SrA Hoffman. Every month, each roommate paid the appellant $225.00 for his portion of the rent and gave the appellant additional funds to cover his share of the utility bills. The appellant then paid the landlord and utility companies.

Following a party at the house on 5 September 1998, the appellant told SrA Hoffman that he had cashed the September rent checks given to him by SrA Hoffman and SrA Gunnels and that someone at the party had stolen all of that money, including the cash paid by SrA Bohl. The roommates agreed to add $75.00 to each month's rent for the next three months to replace the stolen money. The appellant did not actually cash SrA Gunnels' September rent check until 14 September 1998.

The appellant contends that he cannot be convicted of larceny of rent or utility payments received from his roommates because once the payments were given to him, he became the owner of that money. His theory is that, as the sole signor of the lease, he, and he alone, was responsible to the landlord and had the right to possession of the rental house. Similarly, the utilities were all in his name and he alone was legally responsible for payment. When the appellant agreed to allow the three roommates to live in the house, they became his tenants and each owed him a duty to pay rent and utility expenses. He in turn owed them a place to live and adequate utilities for the month covered by the payments, which they in fact received. No evidence to the contrary was presented at trial.

■■■ The government argued, both at trial and on appeal, that the appellant had a fiduciary duty to use the monies paid him as his roommates intended. The government's reliance on this theory is understandable because "withholding of another's property, after lawfully acquiring its possession, is not wrongful in the absence of a fiduciary relationship between the parties." *United States v. Hughes*, 45 M.J. 137, 139 (1996). However, larceny requires taking, withholding, or obtaining property that rightfully belongs to another or over which another has a superior right of possession. Article 121, UCMJ. Here, the appellant stood in the position of landlord to his three roommates. Once they paid him the monthly rent and utility payments, the money became his and it was legally impossible for him to steal it from himself.

The appellant clearly used false pretenses to obtain additional monies from his roommates to cover the supposedly stolen September rent. Had the government charged the theft of these funds, we would have no difficulty approving a finding of guilty. Unfortunately, the specification as written is so narrow that it cannot be deemed to include funds paid between October and December. Therefore, we can find no legal basis for a finding of guilty to larceny as charged in either Specification 1 or 2 of Charge II.

## B. Charge II, Specification 3

Specification 3 of Charge II alleges that the appellant stole $626.50 from SrA Gunnels. This amount was represented by two checks which the appellant received from SrA Gunnels and subsequently cashed. One check was for $300.00 and represented SrA Gunnels' share of the October rent plus an additional $75.00 toward the supposedly stolen September rent. The second check, in the amount of $326.50 was written to the Mountain Country Estates (the Estates).

### 1. Larceny of $300.00 from SrA Gunnels

■ In late September, the appellant agreed to have SrA Bohl take over the bill-paying responsibilities for the house. SrA Gunnels, who was deployed, was not aware of this new arrangement and sent the appellant a check for $300.00. At the time that he sent this check, SrA Gunnels was unaware that the appellant had received and cashed his September check. During October, SrA Bohl and SrA Gunnels each asked the appellant several times if he had received SrA Gunnels' October rent check. The appellant repeatedly denied receiving the check even though he cashed the check on 19 October 1998.

As already noted, the appellant held the position of landlord with respect to his three tenants. Just as he was entitled to receive rent from his roommates in September, he was similarly entitled to receive rent from SrA Gunnels in October. The fact that he had agreed to have SrA Bohl act as his agent to collect that rent and pay the landlord, did not deprive the appellant of ownership of the rent monies once they were paid. However, the appellant did not have an ownership interest in the additional $75.00 that SrA Gunnels paid to cover part of the allegedly stolen September rent.

When the appellant presented SrA Gunnels' September rent check for payment, SrA Gunnels' legal obligation for September was satisfied. SrA Gunnels only agreed to add $75.00 per month to his future payments because the appellant misled him into believing that the money had been stolen. By this misrepresentation, the appellant received the $75.00 under false pretenses. Thus, a rea-sonable fact finder could find that the appellant stole $75.00 from SrA Gunnels between 19 and 21 October. Moreover, we are ourselves satisfied beyond a reasonable doubt of his guilt of this offense.

### 2. Larceny of $326.50 from SrA Gunnels

On 8 October 1998, SrA Gunnels also sent the appellant a check for $326.50. This check was to cover his share of a debt he and the appellant owed to the Estates on a prior lease. After he sent the check, SrA Gunnels called the appellant and told him that the check was coming. When the appellant told him he had already paid the Estates in full, SrA Gunnels instructed the appellant to destroy the check and he would send another check made out to the appellant. In fact, the appellant had not paid the Estates, but had signed an agreement to pay $82.13 per month for eight months to repay the debt.

On 19 October 1998, the appellant lined through the words "Mountain Country Estates" on SrA Gunnels' check and entered his own name as payee. He then presented the check for payment and received the proceeds in cash. As he had done with the rent check, the appellant repeatedly denied receiving the check from SrA Gunnels. At trial, and on appeal, the appellant contends that he cannot be found guilty of stealing the proceeds of this check. He argues that because he signed a payment agreement to repay the entire debt, he was entitled to the proceeds of SrA Gunnels' check. The appellant also contends that even if he did not have a right to the money when received, he believed he had such a right and acted under an honest mistake of fact.

■ Larceny is a specific intent crime—the accused must have intended to appropriate property to his own use or benefit. A mistake of fact serves as a defense to a specific intent crime, if the mistake "existed in the mind of the accused." Rule for Courts–Martial (R.C.M.) 916(j)(1). It is not necessary that the mistake be reasonable, but it must be honestly held. *United States v. McDivitt*, 41 M.J. 442, 444 (1995). There is no evidence in the record that by signing the agreement with the Estates the appellant

obtained a release of liability for SrA Gunnels. In fact, when he returned from his deployment, SrA Gunnels paid his share directly to the Estates. Moreover, although SrA Gunnels told the appellant he would send him a check for $326.50, he did not give the appellant permission to alter the check made payable to the Estates. Finally, the appellant repeatedly told SrA Gunnels he did not receive the check even after he had already cashed it. Under these circumstances, we find that the appellant had neither a right to the proceeds of the Mountain Country Estates check, nor held an honest mistake of fact that he did.

## C. Conclusion

The findings of guilty to Specifications 1 and 2, Charge II, are not supported by the evidence and are hereby set aside, and dismissed. We approve only so much of Charge II, Specification 3 as finds that the appellant stole about $401.50 from SrA Gunnels between 19 and 21 October 1998.

## III. SENTENCE REASSESSMENT

 Because we have modified the findings, we must now reassess the sentence. We may reassess a sentence instead of ordering a rehearing if we "confidently can discern the extent of the error's effect on the sentencing authority's decision." *United States v. Reed*, 33 M.J. 98, 99 (C.M.A.1991). Therefore, we must "first determine what sentence the court-martial would probably have adjudged if the error had not been committed at trial." *United States v. Peoples*, 29 M.J. 426, 427 (C.M.A.1990). We do that by putting ourselves in the shoes of the sentencing authority. To do so, we can only consider the evidence that was before the sentencing authority at trial. After we reassess the sentence, we must consider the entire record and the allied papers in performing our statutory duty to determine whether the sentence is appropriate. *Id.* at 429. We are satisfied that we can make this determination.

The appellant pled guilty to six specifications of writing non-sufficient funds checks and three specifications of dereliction of duty, including repeated misuse of his government credit cards. In addition, we have found him guilty of stealing over $400.00 from his friend and roommate. The larceny offense of which we find the appellant guilty is the most egregious of those with which he was originally charged. Here he not only failed to pay the rent as his roommate expected, he misled his roommate into paying funds not due him and, even more egregious, he altered a negotiable document in order to accomplish a second theft. We are convinced that the military judge would have adjudged the same sentence even if he had entered the findings as we have now modified them.

## IV. CONCLUSION

The findings, as modified, and the sentence, as reassessed, are correct in law and fact, and accordingly, are

AFFIRMED.

Chief Judge SNYDER and Senior Judge YOUNG concur.